**Andrew BOYO, ABNL, Inc., and ABNL, Ltd., Appellants,**

v.

**Margaret BOYO, Appellee.**

**No. 09–05–233 CV.**

Court of Appeals of Texas, Beaumont.

Submitted March 3, 2006.

Decided June 15, 2006.

 

Olu McGuinnis Otubusin, Uche Mgbara-ho, Martina E. Cartwright, Andrew L. Jefferson, Houston, for appellants.

Ralphaell V. Wilkins, The Wilkins Law Firm, Houston, for appellee.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Margaret Boyo filed a petition for divorce against Andrew Boyo. In the same petition, Margaret sued ABNL, Ltd., a foreign limited liability corporation established under Nigerian law, and ABNL, Inc., a Delaware corporation doing business in Texas. She alleged Andrew and the two companies fraudulently transferred funds and defrauded Margaret of her interest in community property. She alleged Andrew used the two companies to divert community assets in order to deprive her of a just and right division of the marital estate.

Margaret attempted to serve ABNL, Ltd. through the Texas Secretary of State. The company did not file an answer and the trial court entered a default judgment against ABNL, Ltd.

The trial court appointed Margaret and Andrew joint managing conservators of their two children, and ordered Andrew to pay child support and spousal maintenance to Margaret. The final decree granted the divorce, divided the marital estate, enjoined Andrew Boyo from removing the children from the continental United States, found the two companies were alter egos of Andrew, found Andrew conspired with the companies to deplete the community estate through fraudulent transfers, and awarded Margaret $1.25 million from

Andrew and the two companies, jointly and severally.

ABNL, Ltd. filed a restricted appeal claiming the trial court lacked jurisdiction to grant the default judgment because ABNL, Ltd. does not do business in Texas and does not have sufficient minimum contacts with the State. The company says it was not given notice of the claims against it and was denied due process of law. Andrew and ABNL, Inc. appealed the alter ego and fraud findings, and the $1.25 million award. Andrew also appealed the injunction.

We affirm the injunction. We reverse the default judgment against ABNL, Ltd., and we reverse the $1.25 million judgment against Andrew and ABNL, Inc. The cause is remanded for further proceedings consistent with this opinion.

## THE BACKGROUND

Andrew and Margaret married in Nigeria in 1993, arrived in the United States in 1997, and moved to Montgomery County, Texas, in 1999. Prior to the marriage, Andrew owned and managed Andy Boyo Nigeria, Ltd. The company name was later changed to ABNL, Ltd. Andrew was the majority shareholder, chief executive officer, and managing director of ABNL, Ltd. According to Andrew, two other individuals and an "employee/management share" owned the remaining shares.

In 1997, ABNL, Ltd. decided to incorporate ABNL, Inc. in Delaware to handle administrative matters in the United States for ABNL, Ltd. In 1998, sixty percent of the new corporation's shares were assigned to ABNL, Ltd., twenty percent to Andrew, fifteen percent to Peter Boyo, and five percent to Steve Oke. ABNL, Inc. contracted with ABNL, Ltd. to perform administrative services for ABNL, Ltd. from 1998 until 2003.

In 1998, ABNL, Ltd. and Baker Hughes entered into a contract with Shell Petroleum Development Company to construct a barge in New Orleans for exploration work in Nigeria. Shell paid for the construction of the barge during 1999, 2000 and 2001. Andrew testified he individually guaranteed a loan for ABNL, Ltd. for 36 million naira (Nigerian currency) from Community Circular Bank in Nigeria in 1999. Andrew says he pledged his 800,000 shares in ABNL, Ltd. and real estate in Nigeria as security. He testified that in 2001, ABNL, Ltd. defaulted on the loan and Community Circular Bank foreclosed on his ownership interest in the corporation and on the real estate. ABNL, Ltd. contracted with Shell again in 2003 to build another barge but, according to Andrew, Shell cancelled this $34 million contract. Andrew testified that at the time of the execution of this contract, he no longer had any ownership interest in ABNL, Ltd. and was working for the company as a consultant. He says ABNL, Ltd. informed ABNL, Inc. in 2003 that ABNL, Ltd. would not renew the administrative services contract between the two entities. Andrew testified ABNL, Inc. is now defunct.

Margaret filed for divorce in 2002.

## THE DEFAULT JUDGMENT AGAINST ABNL, LTD.

ABNL, Ltd. claims the trial court lacked jurisdiction over the company because the company does not have sufficient minimum contacts with Texas. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 225–31 (Tex.1991) ("Federal constitutional requirements of due process limit the power of the state to assert personal jurisdiction over a nonresident defendant[.] "). ABNL, Ltd. argues the attempted exercise of jurisdiction by the trial court over the

company denied the company due process of law. Margaret contends ABNL, Ltd. waived any jurisdictional challenge by failing to file a special appearance in the trial court. *See, e.g., Lang v. Capital Res. Invs., I & II, L.L.C.,* 102 S.W.3d 861, 864 (Tex.App.-Dallas 2003, no pet.). ABNL, Ltd. responds it never received notice of the lawsuit because Margaret's service of process on the company through the Secretary of State was defective.

■■■ We do not accept the argument that ABNL, Ltd. waived its jurisdictional challenge by not making a special appearance in the trial court before filing this restricted appeal. Due process requires that a party be given notice and an opportunity to present its objections. *See Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80, 85–87, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988). Rule 120a, which requires a special appearance be filed before any other pleading or motion, applies to proceedings in the trial court. *See* TEX.R. CIV. P. 2 (scope of rules); *see* TEX.R. CIV. P. 120a ("Every appearance, prior to judgment, not in compliance with this rule is a general appearance."). *See generally Lang,* 102 S.W.3d at 864 (Special appearance filed after a default judgment and before motion for new trial, preserved due order of pleading under the circumstances.). A restricted appeal is available to a party who did not participate in the trial court. *See* TEX. R.APP. P. 30; *see generally Norman Commc'ns v. Tex. Eastman Co.,* 955 S.W.2d 269, 270 (Tex.1997) (applying prior Rule 45). The procedure for a restricted appeal would serve little purpose if we require a party to show preservation of the challenge in the trial court before filing a restricted appeal. Furthermore, if notice is not given, a party may not learn of the suit until after the trial court loses jurisdiction over the case. *See generally Whitney v. L & L Realty Corp.,* 500 S.W.2d 94,

96 (Tex.1973) ("If the Secretary fails to forward the process, the defendant will probably not learn of the suit until long after the time for filing a motion for new trial.").

■■■ To successfully attack a default judgment by restricted appeal, an appellant must (1) file notice of the appeal within six months of the date of judgment; (2) be a party to the suit; (3) not have participated at trial; (4) not have filed a timely postjudgment motion, request for findings of fact and conclusions of law, or notice of appeal under Rule 26.1(a) of the Texas Rules of Appellate Procedure; and (5) show error apparent from the face of the record. Tex.R.App. P. 26.1(c), 30. *See generally Norman Commc'ns,* 955 S.W.2d at 270 (applying four requirements under prior Rule 45). ABNL, Ltd. satisfies the first four requirements. The issue presented is whether a lack of jurisdiction is apparent from the face of the record. *See Dezso v. Harwood,* 926 S.W.2d 371, 373 (Tex.App.-Austin 1996, writ denied).

■■■ To obtain service on ABNL, Ltd., Margaret relied on section 17.044(b) of the Texas Civil Practice and Remedies Code, the long-arm statute which provides for service of process on a nonresident defendant. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.044(b) (Vernon 1997). *See also* TEX.R. CIV. P. 108a; *Comm'n of Contracts of the Gen. Executive Comm. of the Petroleum Workers Union of the Republic of Mex. v. Arriba, Ltd.,* 882 S.W.2d 576, 584 (Tex.App.-Houston [1st Dist.] 1994, no writ). Under that statute, the Secretary of State is "an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party." TEX. CIV. PRAC. &

REM.CODE ANN. § 17.044(b). Section 17.045(a) provides that "[i]f the secretary of state is served with duplicate copies of process for a nonresident, the documents shall contain a statement of the name and address of the nonresident's home or home office and the secretary of state shall immediately mail a copy of the process to the nonresident at the address provided." TEX. CIV. PRAC. & REM.CODE ANN. § 17.045(a) (Vernon Supp.2005). If service is obtained through the Secretary of State pursuant to the statute, the Secretary of State's certificate of service, absent fraud or mistake, establishes service of process. *Campus Invs., Inc. v. Cullever,* 144 S.W.3d 464, 465 (Tex.2004) (citing *Capitol Brick, Inc. v. Fleming Mfg. Co.,* 722 S.W.2d 399, 401 (Tex.1986)).

■ Because this was a no-answer default judgment, the issue of minimum contacts was not actually litigated in the trial court. *See generally Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199 (Tex.1985)(distinguishing default judgments from non-default cases). To support a default judgment based on service under the long-arm statute, the record must show (1) the pleadings contain allegations that make the defendant amenable to process by the use of the long-arm statute, and (2) the defendant was, in fact, served in the manner required by the statute. *Whitney,* 500 S.W.2d at 95–96. In a restricted appeal of a default judgment, there are no presumptions of valid issuance, service, and return of citation. *Primate Constr., Inc. v. Silver,* 884 S.W.2d 151, 152 (Tex.1994). The record must affirmatively show at the time the court enters the default judgment an appearance by the defendant, proper service of citation on the defendant, or a written waiver of service by defendant. *See Carmona v. Bunzl Distribution,* 76 S.W.3d 566, 568 (Tex.App.-Corpus Christi 2002, no pet.).

Margaret's petition directed that "[p]rocess should be served on Co–Respondent, ABNL, Limited, a foreign limited liability corporation established under the laws of the Federal Republic of Nigeria, having its registered address at 10 Norman Williams Street, Ikoyi, Lagos, State of Nigeria (doing business in the State of Texas), by and through the Secretary of State of Texas, P.O. Box 13697, Austin, Texas 78711–3697." The proof Margaret offers to establish service is a copy of the citation and petition and a copy of the Secretary of State's certificate. However, the certificate shows the Secretary of State received copies of the divorce citation and first amended original petition for divorce, but forwarded the copy to a Texas address: "Abnl, Limited; Andrew Boyo, An Officer And Agent; 1530 Lilac Mist Ln; Houston, TX 77038." This is the address listed in the pleading for ABNL, Inc., not ABNL, Ltd.[1] The certificate notes the process was returned bearing the notation "Unclaimed."

■ The pleadings contain no allegations that the defendant does not maintain a regular place of business in Texas, and has not designated or maintained a resident agent for service of process in Texas. *See* TEX. CIV. PRAC. & REM.CODE § 17.044(a)(1), (b); *McKanna v. Edgar,* 388 S.W.2d 927, 929 (Tex.1965). The pleadings assert generally that ABNL, Ltd. is the alter ego of Andrew Boyo, but these are not set out as jurisdictional allegations and Andrew is not identified in the pleading as an agent for service of process for ABNL, Ltd. The alter ego theory may

---

1. While it was disputed at trial whether Andrew continued to be in control of or had an ownership interest in ABNL, Ltd. at the time suit was filed, we look to the pleadings because this was a no-answer default judgment. *Whitney,* 500 S.W.2d at 95–96.

be applied under appropriate circumstances to "fuse" entities for "minimum contacts" jurisdiction purposes. *See BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 798–99 (Tex.2002). *But see also generally Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex.2005)("[I]t is only the defendant's contacts with the forum that count[.]"). The theory may uphold service under appropriate circumstances. *See Bland v. Kentucky Fried Chicken Corp.,* 338 F.Supp. 871 (S.D.Tex.1971). Alter ego is not a service theory supported by the pleadings in this case, however. Margaret attempted service on the Secretary of State under section 17.044(b). For service of process on the Secretary of State under § 17.044(b) as Margaret attempted, the pleadings must state the foreign corporation does not maintain a regular place of business or a designated agent for service of process in Texas. *See* Tex. Civ. Prac. & Rem.Code § 17.044(b); *McKanna,* 388 S.W.2d at 929; *Lozano v. Hayes Wheels Int'l, Inc.,* 933 S.W.2d 245, 247–48 (Tex. App.-Corpus Christi 1996, no writ); *South Mill Mushrooms Sales v. Weenick,* 851 S.W.2d 346, 350 (Tex.App.-Dallas 1993, writ denied).

There is no pleading that the address to which the Secretary of State sent the copy of the citation and petition was ABNL, Ltd.'s home address or home office. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.045(a); *Arriba, Ltd.,* 882 S.W.2d at 586. There is no indication the Secretary of State forwarded a copy of the petition to ABNL, Ltd. at the address Margaret provided as required by the statute, and we cannot presume those facts. *See Capitol Brick,* 722 S.W.2d at 401. The Secretary's

failure to forward the process to the defendant establishes error on the face of the record. *See Whitney,* 500 S.W.2d at 95–96. The default judgment must be set aside. *See id.* at 97.

■ ABNL, Ltd. asks that the case be dismissed for want of personal jurisdiction. However, the appropriate procedure under these circumstances is to set aside the default judgment and remand the case to the trial court for further proceedings. *See Whitney,* 500 S.W.2d at 97; *McKanna,* 388 S.W.2d at 930. In *McKanna,* the Court concluded as follows:

> McKanna, having now appeared to attack the judgment, is presumed to have entered her appearance to the term of the court at which the mandate shall be filed. Rule 123, Texas Rules of Civil Procedure. The judgments of the courts below are reversed, and the cause remanded to the District Court for a trial on the merits.

*Id.* Rule 123, cited by the Court, provides as follows:

> Where the judgment is reversed on appeal or writ of error for the want of service, or because of defective service of process, no new citation shall be issued or served, but the defendant shall be presumed to have entered his appearance to the term of the court at which the mandate shall be filed.[2]

Tex.R. Civ. P. 123. We are reversing and remanding this case because of want of service of process on the defendant, and Rule 123 provides no new citation need be issued or served on ABNL, Ltd., and the defendant's appearance will be presumed.

---

**2.** The appeal by writ of error procedure has been repealed, and a restricted appeal has been substituted. *See* Tex.R.App. 30. Rule 30 provides in part as follows: "Restricted appeals replace writ of error appeals to the court of appeals. Statutes pertaining to writ of error appeals to the court of appeals apply equally to restricted appeals." Therefore, we read "writ of error" in Rule 123 to mean "restricted appeal."

■ Rule 120a provides in part as follows:

Notwithstanding the provisions of Rules 121, 122 and 123, a special appearance may be made by any party ... for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State.

TEX.R. CIV. P. 120a. A special appearance under Rule 120a does not contest service of process; a special appearance contests whether a defendant is amenable to process—whether it has sufficient contacts with Texas to satisfy due process and the Texas long arm statute. *See Dawson–Austin v. Austin,* 968 S.W.2d 319, 326 (Tex.1998); *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 226; *Kawasaki Steel Corp.,* 699 S.W.2d at 201.

■ Rule 120a anticipates the circumstances presented here and provides that a party may nevertheless file a special appearance on remand notwithstanding Rule 123. Generally, when there has been a denial of right to notice and an opportunity to be heard, the case must be considered anew and the party restored to the position it would have occupied had due process of law been accorded to the party in the first place. *See Peralta,* 485 U.S. at 87, 108 S.Ct. 896 (Only "wiping the slate clean" would restore the petitioner to where he was before due process was denied.); *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) ("Only that would have wiped the slate clean."). When a party asks a court to set aside a judgment, that request is treated generally as a submission to the jurisdiction of the courts of this State. *See Liberty Enters., Inc. v. Moore Transp. Co.,* 690 S.W.2d 570, 571–72 (Tex.1985) (motion for new trial and agreeing to court's order

reinstating suit were affirmative actions after default judgment entered which constituted a general appearance); *Cates v. Pon,* 663 S.W.2d 99, ·102 (Tex.App.-Houston [14th Dist.] 1983, writ ref'd n.r.e.) (held where default judgment entered against appellant and appellant appealed the default judgment, appellant submitted himself to the jurisdiction of the court). However, Rule 120a provides an exception under the circumstances of this case, when a no-answer default judgment is set aside on a restricted appeal because notice of the lawsuit was not provided by service of process. Rule 120a "wipes the slate clean" by permitting a special appearance when a no-answer default judgment is reversed in a restricted appeal for want of service.

The "notwithstanding" clause of Rule 120a was not addressed in *Liberty Enterprises,* and the clause did not apply to the circumstances of that case. 690 S.W.2d at 571–72. In *Liberty Enterprises,* the Court held a defendant whose motion for new trial stated it was "ready to try the case when it is properly set for trial[,]" and who agreed to the trial court's order reinstating the cause of action, entered a general appearance despite having initially filed a special appearance after a default judgment. *Id.* The "notwithstanding" clause of Rule 120a does not reference the motion for new trial rule or any agreement by a party which submits the party to the jurisdiction of the court.

*McKanna* did not address the "notwithstanding" clause of Rule 120a either. In *McKanna,* the defendant executed and delivered a note payable in Austin, Texas. *See McKanna,* 388 S.W.2d at 928. The parties agreed McKanna was doing business in Texas; the Supreme Court noted that "problem"—the issue here—was not before the Court. *See id.* at 929. The Supreme Court reversed the default judg-

ment because service was obtained through the Secretary of State under the long-arm statute, and the pleadings included no assertion that the defendant did not maintain a place of regular business in Texas or a designated agent upon whom service could be made. *See id.* at 929–30. In *McKanna,* however, the possible applicability of Rule 120a was not mentioned, presumably because the parties agreed the defendant was doing business in Texas and the lawsuit arose out of a note payable in Austin, Texas. *See id.* at 929.

In its brief to this Court, ABNL, Ltd. asks only that the default judgment be set aside and it be dismissed for lack of personal jurisdiction. We believe the arguments are consistent with the assertion that Texas courts do not have jurisdiction over the defendant or its property to enter a money judgment against it. Rule 120a permits the proper filing of a special appearance on remand under these circumstances notwithstanding Rule 123.[3] We reverse the default judgment and remand the claims against ABNL, Ltd. to the trial court for further proceedings consistent with this opinion.

### FRAUD AND ALTER EGO

 Andrew and ABNL, Inc. argue the evidence is legally insufficient to support the trial court's fraud and alter ego findings. *See generally City of Keller v. Wilson,* 168 S.W.3d 802 (Tex.2005) (legal sufficiency standard of review). A corporation is a separate legal entity from its shareholders, officers, and directors. *See Wynne v. Adcock Pipe and Supply,* 761 S.W.2d 67, 68 (Tex.App.-San Antonio 1988, writ denied). In exceptional circumstances, however, a court may disregard the corporation's separate existence and hold an individual liable for what would otherwise be an obligation only of the corporation. *See Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986), *superseded in part by* TEX. BUS. CORP. ACT ANN. art. 2.21 (Vernon 2003).[4] This disregard generally is referred to as piercing the corporate veil. The alter ego doctrine is one theory used to pierce the corporate veil. *Castleberry,* 721 S.W.2d at 272. The theory may be applied if there is a unity between the corporation and the individual to the extent that the corporation's separateness has ceased, and holding only the corporation liable would be unjust. *See id.* Apart from the alter ego theory, however, the corporate veil may be pierced if the corporation is used for the purpose of fraud. *See id.*

 Courts occasionally reverse pierce, and under exceptional circumstances hold a corporation liable for the debts of a controlling shareholder who has used the corporation to hide assets. *See Zahra Spiritual Trust v. United States,* 910 F.2d 240, 243–44 (5th Cir.1990). Reverse piercing is sometimes used to char-

---

**3.** As we have discussed, Texas Rule of Civil Procedure 123 provides that no new service shall be issued or served when a judgment is reversed for want of service, and that the defendant "shall be presumed" to have entered an "appearance." *See* TEX.R. CIV. P. 123. Rule 123 is not rendered entirely inapplicable by the "notwithstanding" clause of Rule 120a. ABNL, Ltd. now has notice of the claims against it and will be before the trial court on remand. ABNL, Ltd. need not be served with new process in this case and will be presumed to have entered a general appearance if a special appearance is not properly filed.

**4.** The parties have not briefed and so we do not address the scope of article 2.21. *See Texas–Ohio Gas, Inc. v. Mecom,* 28 S.W.3d 129, 137 n. 8 (Tex.App.-Texarkana 2000, no pet.); *Menetti v. Chavers,* 974 S.W.2d 168, 173–74 (Tex.App.-San Antonio 1998, no pet.) (noting that for all matters covered by art. 2.21, the corporate veil may not be pierced absent a showing of actual fraud).

acterize as part of a community estate what would otherwise be a corporate asset. *See generally Zisblatt v. Zisblatt,* 693 S.W.2d 944, 952 (Tex.App.-Fort Worth 1985, writ dism'd). In the context of a divorce, the evidence must show not only that there is unity of the corporation and the spouse, but also that the spouse's improper use of the corporation has damaged the community estate, and the loss cannot be remedied by reimbursement. *See Lifshutz v. Lifshutz,* 61 S.W.3d 511, 516–18 (Tex.App.-San Antonio 2001, pet. denied).[5]

A spouse who controls the other spouse's interest in community property owes a fiduciary duty to the other spouse and a presumption of constructive fraud arises if the property interest is disposed of without the other spouse's knowledge or consent. *See In re Marriage of DeVine,* 869 S.W.2d 415, 422 (Tex.App.-Amarillo 1993, writ denied); *Jackson v. Smith,* 703 S.W.2d 791, 795 (Tex.App.-Dallas 1985, no writ). The spouse who disposes of the community property without the knowledge or consent of the other has the burden of proof to show the fairness of the disposition of the community property. *DeVine,* 869 S.W.2d at 422. A claim of fraud on the community may be used to recover specific property or to obtain a greater share of the community estate on divorce. *See Lucy v. Lucy,* 162 S.W.3d 770, 777 (Tex.App.-El Paso 2005, no pet.). Although the claim may not be brought as an independent cause of action for damages against the spouse in a suit for divorce, the claim may be asserted for con-

sideration in the court's just and right division of the community estate. *See Schlueter v. Schlueter,* 975 S.W.2d 584, 585–89 (Tex.1998).[6] The court may award a money judgment against a spouse to achieve an equitable division of the community estate, but the amount of the judgment must be referable to a specific value of lost community property. *See id.* at 588. ("Because the amount of the judgment is directly referable to a specific value of lost community property, it will never exceed the total value of the community estate.").

Texas courts have permitted the joinder in a divorce petition of a third party to whom a community asset was transferred. *See Southwest Tex. Pathology Assocs., L.L.P. v. Roosth,* 27 S.W.3d 204, 208 (Tex.App.-San Antonio 2000, pet. dism'd w.o.j.); *Osuna v. Quintana,* 993 S.W.2d 201, 205–11 (Tex.App.-Corpus Christi 1999, no pet.). Joining the third party permits adjudication of that party's ownership claim to the transferred asset. *See In re Burgett,* 23 S.W.3d 124, 127 (Tex.App.-Texarkana 2000, no pet.).

ABNL, Inc. was incorporated in 1997 after Andrew and Margaret were married, and their ownership interest in the corporation is community property. *See* TEX. FAM.CODE ANN. § 3.002 (Vernon 1998). Andrew testified ABNL, Inc. was incorporated for business expansion purposes and to manage money for ABNL, Ltd. for work performed for Shell Petroleum Development Company. He testified

---

5. The trial court made no express finding that reimbursement was an inadequate remedy. *See* TEX. FAM.CODE ANN. § 3.408 (Vernon Supp. 2005). *See also Jensen v. Jensen,* 665 S.W.2d 107, 109–10 (Tex.1984). However, appellants do not raise this issue on appeal.

6. The parties have not briefed and so we do not address the effect of *Schlueter* on a conspiracy claim against a third party. *See, e.g.,*

*Mayes v. Stewart,* 11 S.W.3d 440 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). In *Schlueter,* the Supreme Court did not "reach the issue" of whether "separate or independent tort claims" against a third party "should also be abolished," because the third party did not make the argument. *Schlueter,* 975 S.W.2d at 590.

there were other shareholders of ABNL, Inc. and one of them, Peter Boyo, managed the day-to-day operations of the company. Andrew, on occasion, paid personal expenses out of ABNL, Inc.'s account. He testified these amounts were deducted from his salary. His testimony demonstrates ABNL, Inc.'s corporate bank accounts were kept separate from individual bank accounts; ABNL, Inc.'s assets were not intermingled with personal assets; the corporation filed its own tax returns; and its employees were employed by the corporation and not by Andrew. Funds were sometimes wired by Andrew to Margaret's bank account through an ABNL, Ltd. account. Margaret presented evidence Andrew commingled community estate funds with ABNL, Inc. funds. She testified Andrew, ABNL, Inc. and ABNL, Ltd. were one and the same.

Margaret claims Andrew retained actual control of ABNL, Inc. and ABNL, Ltd.[7] Andrew says he lost control of ABNL, Ltd., the only client and the majority shareholder of ABNL, Inc., before the divorce. He transferred community estate assets to ABNL, Inc. and others, though he claims the transfers were for consideration. Margaret says Andrew violated his fiduciary duty to her by conspiring to defraud her of her interest in the community estate, and by fraudulently transferring assets,[8] specifically wire transfers from ABNL, Inc. accounts to third parties and vehicle transfers to ABNL, Inc. She testified Andrew, through ABNL, Inc., made several questionable transfers to Andrew's friends, relatives, and business associates.

Andrew testified the transfers were either in the course of business or facilitated the exchange of naira for dollars.

The fraud and alter ego findings indicate the trial court did not find Andrew's testimony credible and the judge believed Margaret's testimony. As the factfinder she was the sole judge of the credibility of the witnesses. *See City of Keller*, 168 S.W.3d at 819. Considering Margaret's testimony and the circumstantial evidence, there is more than a scintilla of evidence to support the trial court's alter ego and fraud findings as to Andrew and ABNL, Inc.

## $1.25 MILLION MONEY JUDGMENT

Andrew contends the trial court erred in awarding Margaret $1.25 million against Andrew, ABNL, Ltd., and ABNL, Inc. He also argues the evidence is factually insufficient to support the findings of alter ego and fraudulent transfer of property.[9] ABNL, Inc. adopts Andrew's contention that the evidence is factually insufficient to support a finding of fraudulent transfer, and ABNL, Inc. also argues the evidence is factually insufficient to support the alter ego finding. The finding of fact by the trial court addressing the $1.25 million award states that "[i]n order to effect a just and right division of the marital estate of the parties, the Court has determined that it is necessary and appropriate to grant Margaret Boyo a judgment in the amount of $1,250,000 against Andrew Boyo, ABNL, Inc., and ABNL, Ltd., joint and severally." The trial court gave no

---

7. The domination of corporate affairs, even by a sole stockholder, will not alone justify ignoring the separate existence of the corporation. *See Zisblatt v. Zisblatt*, 693 S.W.2d 944, 950 (Tex.App.-Fort Worth 1985, writ dism'd).

8. There is also evidence Andrew failed to maintain mortgage payments on the parties'

residence, resulting in a foreclosure and loss of the property.

9. *See generally Dow Chem. Co. v. Francis*, 46 S.W.3d 237 (Tex.2001) (factual sufficiency standard of review); *see also Cain v. Bain*, 709 S.W.2d 175 (Tex.1986) (factual sufficiency standard of review).

other reason for the specific dollar amount of the money judgment.

Margaret testified the community estate was approximately $230,000, not considering the ownership in, or assets of, the corporations. The ownership interest in ABNL, Inc. is awarded to Andrew in the judgment. The judgment divides specific property and debts, and awards certain of the transferred vehicles to Margaret. The judgment also includes an award of $95,000 to Margaret, which Andrew does not appeal, "[f]or the purpose of a just and right division of property made in this decree[.]" Any additional judgment against Andrew beyond $230,000 would not be "a division" of the community estate unless the ownership in or assets of the corporations are considered or there is evidence of other property fraudulently transferred.

From the record, the basis for the $1.25 million judgment appears to be a calculation of a share of the profits from the purported $34 million contract with Shell, and the trial court's alter ego findings reverse-piercing the corporate veils of the two companies, specifically ABNL, Ltd. The damage amount is not tied to the transfer or loss of any other specific asset asserted to be part of the community estate.

Andrew testified that Shell canceled the $34 million contract and that his interest in ABNL, Ltd. was lost to a bank. Margaret testified the contract is still performing and Andrew is still controlling both ABNL, Ltd. and ABNL, Inc. While her testimony provides more than a scintilla of evidence supporting the trial court's findings, she did not offer any other evidence in support of her testimony concerning the contract. The continued actual performance of the Shell contract, as well as Andrew's continued complete domination of the businesses, would seem to be issues capable of proof from sources other than Margaret, and from sources with greater personal knowledge.

■■■ Regardless, the profits would be ABNL, Ltd.'s profits absent the alter ego findings. We have set aside the default judgment against ABNL, Ltd. and that company is entitled to litigate its claim to any asset or profits alleged to be community property. See In re Burgett, 23 S.W.3d at 127.[10] As to Andrew and ABNL, Inc., the evidence presented in this record is factually insufficient to support the amount of $1.25 million money judgment against Andrew as a division of community assets and against ABNL, Inc. for specific fraudulent transfers of community property.[11] A money judgment must be supported by factually sufficient evidence, and in this

---

10. Andrew and ABNL, Inc. do not specifically argue the claims are so intertwined with the claim against ABNL, Ltd. as to require a new trial, and generally an "appellate court cannot reverse a trial court's judgment absent properly assigned error." See Pat Baker Co., Inc., v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998). However, Andrew did assert the trial court committed reversible error when it awarded Margaret the $1.25 million judgment on the basis that the trial court mischaracterized separate property as community property, and based on the lack of evidence of alter ego and fraud. Here, the damage award can only be supported by piercing of the corporate veil as to ABNL, Ltd. We are to liberally construe points of error to fairly and equitably adjudicate the litigants' rights. See Tittizer v. Union Gas Corp., 171 S.W.3d 857, 863 (Tex.2005).

11. We need not decide the factual sufficiency issue raised by Andrew and ABNL, Inc. on the alter ego and fraud findings, because a ruling in their favor would not afford them any greater relief than that ordered, a new trial, and a finding overruling the issues would not preclude a new trial because of the insufficiency of the evidence to support the money judgment.

context must be referable to a specific value of lost community property. *See Schlueter*, 975 S.W.2d at 585–89. The trial court abused its discretion in dividing the estate.

### THE INJUNCTION

Andrew argues the trial court erred by banning him from traveling internationally with his children. He says the record lacks any evidence to support the trial court's decision. Texas Family Code section 153.501 provides that if credible evidence indicating a potential risk of international abduction of a child by a parent is presented, the court must determine whether to take measures prescribed in section 153.503. TEX. FAM.CODE ANN. §§ 153.501(a), 153.503 (Vernon Supp.2005). Among the factors the court must consider are the best interests of the child, the risk of abduction based on risk factors described by section 153.502, and any obstacles to recovering the child if abducted to a foreign country. *See id.* §§ 153.501(b), 153.502. In determining whether there is a risk of international abduction of a child by the child's parent, the court must consider evidence of, among other things, the parent's lack of "financial reason to stay in the United States, including evidence that the parent is financially independent, is able to work outside of the United States, or is unemployed," and a parent's history of violating court orders. *See id.* § 153.502(a). If the court is presented with this evidence, the court must also consider whether the parent has strong ties to a country that is not a signatory to the Hague Convention on the Civil Aspects of International Child Abduction and whether the parent lacks strong ties to the United States. *Id.* § 153.502(b). If the court finds it necessary under section 153.501 to protect a child from international abduction by the parent, it may prohibit the parent from removing the child from the United States. *Id.* § 153.503(4)(A).

■ In its findings of fact and conclusions of law applying section 153.502, the court found a potential risk of Andrew's international abduction of the children under section 153.501. To protect the children, the trial court restricted Andrew's access to the children's passports and prohibited him from removing the children from the continental United States. Margaret testified she is concerned that if Andrew travels to Nigeria with the children, they may not be returned to her. She testified she would not be able to afford actions necessary to return the children to the United States.

Andrew argues there is no evidence of the risk of international abduction. There is evidence Andrew lacks financial reason to stay in the United States and has a history of violating the court's orders, both of which are factors the court considers in determining whether there is a risk of international abduction. *See id.* § 153.502(a)(3),(6). Section 153.502(a)(3) specifically states that when a court considers whether the parent lacks financial reason to stay in the United States, the evidence may include "evidence that the parent is financially independent, is able to work outside of the United States, or is unemployed[.]" Andrew testified he was not employed currently by any entity but he provides independent consulting services to three companies located in Ghana and Nigeria. He testified he typically spends at least half of the year in Nigeria. The record also indicates the trial court previously held Andrew in contempt for failure to pay court-ordered child support, and found him in contempt of the second temporary child-support order at trial.

Subsection (b) of section 153.502 requires the court consider (1) whether the parent has strong ties to another country

**424**

that is not a signatory to the Hague Convention on the Civil Aspects of International Child Abduction and (b) whether the parent lacks strong ties to the United States, regardless of whether the parent is a citizen or permanent resident of the United States. *Id.* § 153.502(b). Pursuant to subsection (c), the court may also consider whether the foreign country to which the parent has ties presents obstacles to the return of an abducted child to the United States, has any legal mechanisms for enforcing Texas child possession or access orders, is a party to the Hague Convention on the Civil Aspects of International Child Abduction, or whether the child's health or safety would be endangered in the country because of specific circumstances relating to the child. *Id.* § 153.502(c)(4)(A),(B),(H),(J). Andrew testified he moved his family to the United States because his life was threatened, which he testified is "typical in our line of business." On this record, we cannot say the trial court abused its discretion in granting the injunction.

CONCLUSION

The trial court's injunction is affirmed. The trial court erred in entering a default judgment against ABNL, Ltd. We set aside the default judgment. We hold the evidence is factually insufficient on this record to support the money judgment of $1.25 million against Andrew and ABNL, Inc., and grant their request for a new trial. The $1.25 million judgment is reversed. The cause is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.