# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-08-00688-CV

---

**Joachim Osayande Osojie, Appellant**

**v.**

**Vivian Osojie, Appellee**

---

**FROM COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY,
NO. 07-2948-FC4, HONORABLE JOHN McMASTER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final decree of divorce. In four issues, appellant Joachim Osayande Osojie complains that the trial court erred in awarding a divorce when the evidence was insufficient to support the existence of a marriage, abused its discretion in restricting his periods of visitation and access to his children and in awarding a disproportionate division of the community estate, and that the trial court's Final Decree of Divorce Nunc Pro Tunc is void because it seeks to correct a judicial rather than clerical error. Finding no error in the trial court's judgment, we affirm the judgment.

### BACKGROUND

Joachim and Vivian Osojie were married by formal marriage ceremony in Nigeria on December 15, 1993. Their marriage ceremony was witnessed by friends and performed by a Nigerian official authorized to perform marriages in Nigeria. The record includes a copy of a

certificate of marriage issued by the Federal Republic of Nigeria. After their marriage in Nigeria, the Osojies returned to Texas, their home state, where they lived continuously as husband and wife until Joachim left in the summer of 2007. There were three children born of the marriage.

In July 2007, Joachim left his wife and family and moved to Nigeria to accept a position with Access Bank. Vivian filed for divorce in December 2007. The record reflects that Joachim had minimal contact with his children, seeing them only twice between the time he left in 2007 and the date of the final divorce hearing in July 2008. The record does reflect that Joachim had two telephone conversations with his eldest son that were very upsetting to the son.

From the summer of 2007 until the date of the final hearing in 2008, the record reflects that Joachim transferred several hundred thousands of dollars from the United States to Nigeria. The record further reflects that Joachim has disregarded the trial court's temporary orders, has continued to hide the funds that were ordered by the trial court to be paid to Vivian, and has failed to pay any child support or medical support for the children during this same period.

The final hearing was held by the trial court on July 21, 2008. Vivian testified in support of her requests for divorce, appointment as sole managing conservator of the children, child support, division of the marital estate, and restrictions on Joachim's possession and visitation of the children. Joachim did not appear at the hearing except through counsel.

The trial court signed the final decree of divorce on August 8, 2008. In the final decree of divorce, the trial court appointed Vivian as sole managing conservator of the children and appointed Joachim as possessory conservator. The decree also restricted Joachim's possession and visitation of the children to three supervised visits of one week each per calendar year upon 21 days

written notice to Vivian unless otherwise mutually agreed by the parties. The trial court also awarded a 65/35 split of the marital estate in favor of Vivian.

Included within the trial court's award to Vivian was $37,180.22 held on account by Fidelity Investments in Joachim's name. The trial court's original decree specified that this amount was held in a single account number ending in 519. The trial court entered findings of fact and conclusions of law on November 4, 2008, and Joachim filed his notice of appeal on November 7, 2008. On November 13, 2008, the trial court signed a Final Decree of Divorce Nunc Pro Tunc specifying that the amount awarded to Vivian and held on account by Fidelity Investments was held in three accounts with numbers ending in 462, 519, and 821.

## ANALYSIS

In four issues, Joachim challenges the trial court's final decree of divorce. He argues that the trial court erred in granting a divorce because the evidence was insufficient to support the existence of a marriage. He further argues that the trial court abused its discretion in granting him only restricted possession and visitation of his children and in awarding Vivian a disproportionate amount of the marital estate. He also contends that the trial court's entry of a Final Decree of Divorce Nunc Pro Tunc is void because the trial court attempted to correct a judicial error rather than merely a clerical error. In response, Vivian argues that Joachim presents multifarious issues on appeal and has failed to preserve error but, even if error was preserved, the evidence was factually sufficient to support the trial court's judgment. Urging this Court to affirm the trial court's judgment, Vivian further asserts that the trial court did not abuse its discretion in restricting

3

Joachim's possession and visitation of their children or in awarding her a greater share of the marital estate and that the trial court's entry of a Final Decree of Divorce Nunc Pro Tunc was proper.

***Standard of Review***

With regard to the issues of division of the marital estate and child custody, possession, and visitation raised by Joachim on appeal, we review the trial court's decisions on such matters for abuse of discretion. *See Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1991) (division of marital estate); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (child custody, control, possession, and visitation). Absent a clear abuse of discretion, an appellate court will not disturb a trial court's division of property. *Murff*, 615 S.W.2d at 698-99; *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974). And we give wide latitude to the trial court's determinations on custody, control, possession, and visitation. *Gillespie*, 644 S.W.2d at 451.

As a general rule, a trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). The fact that a trial court may decide a matter within its discretionary authority differently than an appellate court in similar circumstances does not demonstrate an abuse of discretion. *Downer*, 701 S.W.2d at 242. When reviewing matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). There is no abuse of discretion if some probative and substantive evidence supports the trial court's order. *Zeifman v. Michels*, 212 S.W.3d 582, 587

4

(Tex. App.—Austin 2006, pet. denied); *McGuire v. McGuire*, 4 S.W.3d 382, 384 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

Under an abuse of discretion standard, legal and factual sufficiency challenges to the evidence are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion. *Zeifman*, 212 S.W.3d at 587; *In re D. M.*, 191 S.W.3d 381, 393 (Tex. App.—Austin 2006, pet. denied); *Dunn v. Dunn*, 177 S.W.3d 393, 396 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). Because we apply an abuse-of-discretion standard to certain issues raised by Joachim on appeal, the traditional sufficiency standards of review overlap the abuse of discretion standard, and we employ a hybrid analysis. *See Zeifman*, 212 S.W.3d at 587-88; *see also Echols v. Olivarez*, 85 S.W.3d 475, 476-77 (Tex. App.—Austin 2002, no pet.); *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We engage in a two-pronged inquiry asking first, whether the trial court had sufficient information upon which to exercise its discretion and, second, whether the trial court erred in its application of discretion. *Zeifman*, 212 S.W.3d at 588. A traditional sufficiency review comes into play with regard to the first question, and we must then determine whether, based on the evidence, the trial court's decision was reasonable. *Id.*

In an appeal after a bench trial in which the trial court entered findings of fact and conclusions of law, the trial court's findings have the same weight as a jury verdict. *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). When challenged, we review the trial court's findings for legal and factual sufficiency. *Id.*

We will sustain a legal sufficiency challenge when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). In determining whether there is legally sufficient evidence to support the finding under review, we examine the record for evidence and inferences that support the challenged finding, considering evidence favorable to the finding if a reasonable factfinder could, and disregarding evidence contrary to the finding unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827-28 (Tex. 2005). We will not substitute our judgment for that of the factfinder if the evidence falls in the zone of reasonable disagreement. *Id.* at 822. If there is any evidence of probative force to support the finding—i.e., more than a scintilla—we will uphold the finding and overrule the legal sufficiency challenge. *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) (per curiam).

In determining a question of factual sufficiency, we weigh and consider all of the evidence in the record. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We will sustain a factual sufficiency challenge and "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See id.*

In a case tried to the bench, the trial court is the "sole judge of the credibility of the witnesses and the weight to be given their testimony." *McGalliard v. Kuhlmann*, 722 S.W.2d 694,

6

696 (Tex. 1986). The trial court may believe one witness, disbelieve others, and resolve inconsistencies in any witness's testimony. *Id*. at 697.

### Existence of the Marriage

In his first issue, Joachim challenges the trial court's judgment that there was a valid marriage. Among other things, Joachim argues that the trial court should have taken judicial notice of Nigerian law, that the evidence is factually insufficient to support the trial court's conclusion that the parties were married in accordance with Nigerian law or, alternatively, that the parties were married under Texas common law. Vivian responds that Joachim's complaints under this issue are multifarious and, therefore, can be disregarded by this Court. She further asserts that Joachim has failed to preserve error with regard to his claim that the parties were not married in accordance with Nigerian law because counsel withdrew the motion to take judicial notice of Nigerian law at the final hearing and, therefore, did not present this matter to the trial court or obtain a ruling on his motion. Notwithstanding the withdrawal of Joachim's motion, Vivian asserts that the evidence was factually sufficient to support the trial court's findings that the parties were validly married via formal ceremony in Nigeria or through common law in Texas.

We agree with Vivian that the issue raised by Joachim's argument is multifarious in that it attacks the trial court's findings and judgment with numerous arguments. *See Rich v. Olah*, 274 S.W.3d 878, 884-85 (Tex. App.—Dallas 2008, no pet.); *Hollifield v. Hollifield*, 925 S.W.2d 153, 155 (Tex. App.—Austin 1996, no writ). However, in the interest of justice, we will address Joachim's complaints to the extent we can discern them with reasonable certainty. *See Green v. Kaposta*, 152 S.W.3d 839, 842 n.2 (Tex. App.—Dallas, no pet.); *Hollifield*, 925 S.W.2d at 155.

7

After reviewing Joachim's brief and reply brief, we conclude that his primary complaint under this issue is that the evidence is factually insufficient to support the trial court's determination that a valid marriage existed under either Nigerian or Texas law. To the extent his arguments seek to present additional complaints, we disregard them as multifarious. *See Hollifield*, 925 S.W.2d at 155.

With regard to Joachim's challenge that the evidence is factually insufficient to support the trial court's determination that a valid marriage existed under Nigerian law, we also agree with Vivian that, by withdrawing his request for the trial court to take judicial notice of Nigerian law, Joachim has failed to preserve this issue for our review. *See* Tex. R. App. P. 33.1. In any event, the record includes Vivian's uncontroverted testimony that the parties were married in accordance with Nigerian law. The record also includes a certificate of marriage for Joachim and Vivian issued by the Federal Republic of Nigeria.[1] On this record, we cannot conclude that the trial court's judgment "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain*, 709 S.W.2d at 176.

We likewise reject Joachim's argument that the evidence is factually insufficient to support the trial court's determination that a valid marriage existed under Texas common law. Proof of an informal marriage under Texas common law may be established by evidence that the man and woman agreed to be married and that after the agreement they lived together in this state as husband and wife and represented to others that they were married. Tex. Fam. Code Ann. § 2.401(a)(2) (West 2006). In support of his argument that the evidence was factually insufficient to prove a

---

[1] *See In re Estate of Loveless*, 64 S.W.3d 564, 575 (Tex. App.—Texarkana 2001, no pet.) (presuming that parties complied with formalities of foreign law if foreign government issued marriage certificate).

common law marriage, Joachim argues that there was no evidence of a present agreement to be married. This argument is without merit.

The record includes Vivian's undisputed testimony that the parties were married in a formal ceremony in Nigeria on December 15, 1993, and, thereafter returned to Texas and lived together as husband and wife. Vivian further testified that they filed joint tax returns, opened bank accounts, and purchased property as husband and wife and held themselves out to be husband and wife to their sons' schools and doctors. She testified that they filed sworn immigration documents stating that they were husband and wife as part of her application for United States citizenship and that she had used the last name of Osojie since 1993. Vivian's undisputed testimony of her and Joachim's cohabitation and representations to others is circumstantial evidence of an agreement to be married. *See Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993) (proponent of common law marriage may prove agreement to be married by direct or circumstantial evidence). We therefore conclude that the evidence is factually sufficient to support the trial court's alternative determination that Vivian and Joachim were married under Texas common law. We overrule Joachim's first issue.

### *Access and Possession*

In his second issue, Joachim complains that the trial court abused its discretion in awarding him only restricted periods of access and possession of his children. Joachim further contends that the evidence is insufficient to support the trial court's finding that he presents a risk of international abduction.

The trial court entered the following findings of fact with regard to conservatorship and possession:

9

7.     It would not be in the best interest of the children to appoint the parents as joint managing conservators of the children because such appointment would significantly impair the children's emotional development.

8.     It is in the best interest of the children that Vivian Osojie be appointed the sole managing conservator of the children and that Joachim Osayanse Osojie be appointed the possessory conservator of the children.

*Findings of Fact - Possession*

9.     The periods of possession vary from the Standard Possession Order. The Standard Possession Order would be unworkable in these circumstances for the following reasons:
   a.     There is a risk of international abduction of the children by Joachim Osayande Osojie to Nigeria[.]
   b.     Joachim Osayande Osojie moved to Lagos, Nigeria on or about July 2, 2007[,] with the intent of residing in Nigeria and abandoning his home in the United States.
   c.     Since his move to Nigeria, Joachim Osayande Osojie has visited his children on only two occasions.
   d.     For a three month period from February 2008 through April 2008, Joachim Osayande Osojie did not attempt any form of contact with his children.

10.     It is in the best interest of the children that Joachim Osayande Osojie's periods of possession of the children be continuously supervised due to the risk of international abduction of the children to Nigeria.

11.     The requirement of a bond in the amount of $50,000 is appropriate for compliance with the possession order in this case because Joachim Osayande Osojie may violate the order.

The trial court also entered the following findings of fact with regard to the risk of international abduction:

14.     The United States is the country of habitual residence of [O.O.], [E.O.], and [E.O.]. All three children were born in the United States and have never resided in any other country.

10

15. Credible evidence has been presented that there is a potential risk of the international abduction of [the children] by Joachim Osayande Osojie.

16. The Court further finds that:
   a. Joachim Osayande Osojie has strong familial, emotional, or cultural ties to another country that is not a signatory to or compliant with the Hague Convention on the Civil Aspects of International Child Abduction;
   b. Joachim Osayande Osojie lacks strong ties to the United States; and
   c. Joachim Osayande Osojie has ties to Nigeria.
      (1) Nigeria presents obstacles to the recovery and return of a child who is abducted to Nigeria from the United States;
      (2) Nigeria has no legal mechanisms for immediately and effectively enforcing an order regarding the possession of or access to [the children] issued by Texas;
      (3) Nigeria has local laws or practices that would enable Joachim Osayande Osojie to prevent Vivian Osojie from contacting the children without due cause and restrict [the children]'s ability to legally leave Nigeria after [the children] reach the age of majority because of [the children]'s gender, nationality, or religion;
      (4) Nigeria is not a party to and compliant with the Hague Convention on the Civil Aspects of International Child Abduction according to the most recent report on compliance issued by the United States Department of State;
      (5) Nigeria does not provide for the extradition of a parental abductor and the return of the children to the United States; and
      (6) Nigeria poses a risk that the children's physical health or safety would be endangered because of specific circumstances relating to the children.

The testimony in the record was undisputed that Vivian was concerned that Joachim may try to abduct the children to Nigeria and that, if the children were taken to Nigeria, Vivian believed that she would never see them again. Vivian also testified that Joachim has strong family and financial ties to Nigeria and that he would prevent her from ever seeing the children again if they

11

were taken to Nigeria. Because of these concerns, Vivian testified that she was requesting the trial court to appoint her as sole managing conservator of the children and restrict Joachim's access and possession of the children to three one-week visits per calendar year with 21-days written notice for each visit.

Section 153.501(a) authorizes a trial court to render orders for the protection of a child "if credible evidence is presented to the court indicating a potential risk of the international abduction of the child by a parent of the child." Tex. Fam. Code Ann. § 153.501(a) (West 2008). In determining whether there is a risk of international abduction of a child by a parent of the child, among other things, a trial court shall consider evidence that a parent:

(1)     has taken, enticed away, kept, withheld, or concealed a child in violation of another person's right of possession of or access to the child, unless the parent presents evidence that the parent believed in good faith that the parent's conduct was necessary to avoid imminent harm to the child;

(2)     has previously threatened to take, entice away, keep, withhold, or conceal a child in violation of another person's right of possession of or access to the child;

(3)     lacks financial reason to stay in the United States, including evidence that the parent is financially independent, is able to work outside of the United States, or is unemployed;

(4)     has recently engaged in planning activities that could facilitate the removal of the child from the United States by the parent, including:
(A)     quitting a job;
(B)     selling a primary residence;
(C)     terminating a lease;
(D)     closing bank accounts;
(E)     liquidating other assets;
(F)     hiding or destroying documents;
(G)     applying for a passport or visa for the parent or the child; or

12

(H)     applying to obtain the child's birth certificate or school or medical records;

(5)     has a history of domestic violence that the court is required to consider under Section 153.004; or

(6)     has a criminal history or a history of violating court orders.

*Id.* § 153.502(a) (West 2008).  The uncontroverted evidence in the record shows that Joachim had quit his job in the United States; he was employed by a bank in Nigeria and, therefore, lacked any financial reason to stay in the United States; he had engaged in a pattern of transferring his assets from the United States to Nigeria; and he had familial and cultural ties to Nigeria.  The record also reflects that Joachim had a history of ignoring and/or violating the trial court's orders.  The trial judge was the sole judge of the witness's credibility, *see McGalliard*, 722 S.W.2d at 696, and we conclude there was sufficient evidence in the record to support the trial court's finding that there was a potential risk of international abduction of the children by Joachim.  *See* Tex. Fam. Code Ann. § 153.502.  We therefore conclude that the trial court acted within its discretion to limit Joachim's possession and access to the children.  *See id.* § 153.503 (West 2008) (specifying preventative measures courts may take upon determining that potential risk for international abduction of child exists, including limiting access and possession and requiring supervised visits); *see also In re Sigmar*, 270 S.W.3d 289, 297-308 (Tex. App.—Waco 2008, orig. proceeding) (concluding that trial court did not abuse its discretion in imposing abduction prevention measures and denying mandamus relief); *Boyo v. Boyo*, 196 S.W.3d 409, 423-24 (Tex. App.—Beaumont 2006, no pet.) (finding potential risk for international abduction of child and imposing restrictions under section 153.503).  We overrule Joachim's second issue.

*Division of Marital Estate*

In his third issue, Joachim complains that the trial court abused its discretion in making a disproportionate division of the community estate. His primary complaint seems to be that Vivian did not plead and prove fault in the breakup of the marriage and, thus, the trial court erred in awarding her a disproportionate share of the marital estate. We find this issue to be without merit.

A trial court is obligated to make a just and right division of the marital estate in rendering a final decree of divorce. *See* Tex. Fam. Code Ann. § 7.001 (West 2008);[2] *Murff*, 615 S.W.2d at 698-99; *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). A just and right division must have due regard for the rights of each party as well as for the children. *See* Tex. Fam. Code Ann. § 7.001; *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 & nn.1-2 (Tex. 1977). A "just and right" division does not require a trial court to divide the marital estate into equal shares. *Murff*, 615 S.W.2d at 699 (recognizing that community property need not be equally divided); *Schuster v. Schuster*, 690 S.W.2d 644, 645 (Tex. App.—Austin 1985, no writ). A trial court has broad discretion to consider various factors—including but not limited to disparities of incomes, earning capacities of the parties, financial obligations, fault in the breakup of the marriage, benefits which the party not at fault would have derived from a continuation of the

---

[2] Section 7.001 of the family code states:

> In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage.

Tex. Fam. Code Ann. § 7.001 (West 2008).

marriage, education of each spouse, and the nature of the property to be divided—when dividing the marital estate. *Murff*, 615 S.W.2d at 698-99. As a reviewing court, we presume the trial court exercised its discretion properly. *Id.* at 699 (citing *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974)).

Contrary to Joachim's assertions, paragraph 9 of Vivian's petition for divorce states, "Petitioner should be awarded a disproportionate share of the parties' estate for the following reasons, including but not limited to . . . fault in the break up of the marriage . . . ." The unrefuted evidence showed that Joachim quit his job and abandoned his family to move to Nigeria in the summer of 2007. He transferred hundreds of thousands of dollars to Nigeria without Vivian's knowledge or consent. From the time he left in the summer of 2007 until the final divorce hearing in July 2008, Joachim visited his children only twice. The trial court awarded custody and conservatorship of all three children to Vivian, and the record demonstrates that her earning capacity was significantly less than that of Joachim. In addition, the record reflects that Joachim has repeatedly violated the trial court's temporary orders by refusing to pay support from the time he left in 2007 until the final divorce hearing in 2008. This evidence is legally and factually sufficient to support the trial court's finding that a just and right division of the marital estate was accomplished by awarding a disproportionate share to Vivian. *See* Tex. Fam. Code Ann. § 7.001; *Murff*, 615 S.W.2d at 698-99; *Eggemeyer*, 554 S.W.2d at 139 & nn.1-2.

As the supreme court has recognized, the trial court, as the trier of fact, was "empowered to use its legal knowledge and its human understanding and experience" to evaluate the social and economic needs of Joachim, Vivian, and their children when making a just and right division of the marital estate, and we will not disturb the trial court's division of property absent a

15

clear abuse of discretion. *See Murff*, 615 S.W.2d at 700. On this record, we find no abuse of discretion in the trial court's judgment, and we overrule Joachim's third issue.

### Final Decree Nunc Pro Tunc

In his fourth issue, appellant complains that the trial court's Final Decree of Divorce Nunc Pro Tunc is void because it seeks to correct a judicial rather than clerical error. We disagree.

The trial court signed the original divorce decree on August 8, 2008. The Final Decree of Divorce Nunc Pro Tunc was signed on November 13, 2008, after the trial court's plenary power expired. The issue, then, is whether the final decree nunc pro tunc corrected clerical errors or was void because it corrected judicial errors.

In its original decree, the trial court awarded the entire amount of the Rollover IRA held on account by Fidelity Investments in the name of Joachim Osojie to Vivian. According to the trial court's original decree, this amount of $37,180.22 was held in account number ***-***519. When Vivian attempted to enforce the trial court's judgment, it was discovered that Joachim's Rollover IRA was actually held in three accounts with numbers ending in 462, 519, and 821. The trial court's decree nunc pro tunc was corrected to list all three account numbers instead of the single account number ending in 519. The decree nunc pro tunc did not change the amount of the Rollover IRA awarded to Vivian. Consistent with the original decree, Vivian was awarded $37,180.22.

The rules of civil procedure allow a trial court to correct clerical errors in its judgment even after its plenary power has expired. *See* Tex. R. Civ. P. 316, 329b(f); *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986). A clerical error is a discrepancy between the judgment entered and the judgment actually rendered by the court, *see Andrews v. Koch*, 702 S.W.2d 584, 585

16

(Tex. 1986), whereas a judicial error is an error in the judgment rendered, *see Escobar*, 711 S.W.2d at 231.

Because the trial court in this case rendered judgment awarding the entire amount of the Rollover IRA held by Fidelity Investments in the name of Joachim Osojie to Vivian, it matters not whether this amount was held in one account or three. The trial court's decree nunc pro tunc did not change the amount of the trial court's judgment awarded to Vivian. At the hearing on the motion to enter the decree nunc pro tunc, the trial judge stated, "And, at this point in time, it's to me very clear that this is a clerical error requiring just the addition of three account numbers that were not included." To the extent the trial judge relied upon his personal recollection of the facts at the time the original judgment was entered and then entered the judgment nunc pro tunc, we may presume that his personal recollection supports the finding of clerical error. *See Davis v. Davis*, 647 S.W.2d 781, 783 (Tex. App.—Austin 1983, no writ); *see also Pruet v. Coastal States Trading, Inc.*, 715 S.W.2d 702, 705 (Tex. App.—Houston [1st Dist.] 1986, no writ). Joachim has failed to rebut the presumption that the trial court's personal recollection supports the finding of clerical error. Accordingly, we reject his claim that the trial court erred in its entry of the final decree of divorce nunc pro tunc. *See Davis*, 647 S.W.2d at 783, 785; *Pruet*, 715 S.W.2d at 705. We overrule Joachim's fourth issue.

## CONCLUSION

Having considered and overruled Joachim's issues on appeal, we affirm the trial court's judgment.

17

_____

                    Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton
    Concurring opinion by Justice Puryear

Affirmed

Filed:   August 27, 2009

18