In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-23-00305-CV
_____

**MARVIN KEITH BENNETT, Appellant**

**v.**

**DORIS VARNER BENNETT, Appellee**

_____

**On Appeal from the 1A District Court**
**Jasper County, Texas**
**Trial Cause No. 38113**
_____

**MEMORANDUM OPINION**

This is an appeal from a divorce between Marvin Keith Bennett and Doris

Varner Bennett.[1] In three issues on appeal, Marvin challenges the trial court's denial

of his motion to transfer venue, its division of the marital property, and its finding

of adultery. We affirm.

---

[1]Since the parties share the same last name, we refer to them by their first
names in this opinion.

# I. Background

**Pretrial Motions and Hearings**

The Bennetts married in January 1982 and separated in May 2019. The month they separated; Doris filed her Original Petition for Divorce in Jasper County. In June 2022, Doris filed a First Amended Petition for Divorce, stating "Petitioner has been a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period[.]" She accused Marvin of adultery and stated that their marriage had become insupportable because of discord or conflict of personalities between herself and Marvin, asked for a "just and right division of the parties' estate," and requested a "disproportionate share of the parties' estate" due in part to Marvin's fault in the breakup of the marriage.

On June 19, 2019, after a temporary orders hearing in which Doris appeared, but Marvin did not, the trial court signed default temporary orders. The temporary order divided payment responsibilities, debts, and granted each spouse temporary exclusive and private use of various property and assets. Two days later, Marvin filed a Motion to Transfer Venue arguing that venue in Jasper County was improper, that both he and Doris were residents of Harris County ninety days before the Divorce Petition was filed, and that under Texas Family Code section 6.301, the suit must be transferred to Harris County. Doris responded to Marvin's Motion to

Transfer Venue, arguing that venue was proper in Jasper County because "she has maintained a residence at 874 FM 1013 West, Kirbyville, Jasper County since 2006, and that she has been a member of and attended church at The House of Safety Ministries since 2009 in Kirbyville, Jasper, County." She attached a signed affidavit and a copy of the temporary orders signed by the trial court on June 19th to her Response. In her affidavit, Doris stated the following.

> My home in Kirbyville, Jasper County, Texas is my permanent residence and that [sic] I only stay in Harris County, Texas for purposes of work during the week.
>
> I was born and raised in Mount Union, Jasper County, Texas.
>
> My church, The House of Safety Ministries and my church family are in Kirbyville, Jasper County, Texas.
>
> I have for many years intended and planned on leaving Houston to live at my permanent residence in Kirbyville, Jasper County, Texas upon retirement.
>
> All of my free time is spent at my residence in Kirbyville, Jasper County, Texas where I maintain my permanent residence.
>
> I maintain a mailing address at 874 FM 1013 West in Kirbyville, Jasper County, Texas. My utility bill for said residence is sent to my residence address in Kirbyville, Jasper County, Texas.
>
> I consider Kirbyville, Jasper County, Texas not only to be my permanent residence, but my home.

In response, Marvin filed his own affidavit in which he stated:

> My home is in Harris County, Texas, which is my true and permanent residence and the residence of both my wife and myself prior to the filing for divorce.

3

I have lived in and been a resident of Harris County for nearly forty years.

Prior to my wife filing for divorce, both my wife and I only visited 874 FM 1013 West in Kirbyville, Jasper County during the weekends. When we visited Jasper County, we would only stay on Saturday and leave Sunday afternoon.

Neither my wife nor myself have resided in Jasper County, Texas to meet the residency requirements for filing a divorce in this county.

In September 2019, Marvin filed an Amended Motion to Transfer Venue, supported by a supplemental affidavit in which he stated the couple listed their Kirbyville property as a business on their 2018 joint tax returns, that Doris is a registered voter in Harris County, and that her driver's license has Harris County as her residence. Attached to the Amended Motion were Marvin's supplemental affidavit and copies of the 2018 joint tax return, Doris's voter registration and Driver License, and a transcript of the June 5, 2019, Temporary Orders Hearing. After a hearing in October 2019, Marvin's Amended Motion to Transfer Venue was denied.

**The Trial**

At trial, both parties testified, and both parties' inventories were admitted into evidence.

**Doris's Testimony and Trial Evidence**

Doris testified the parties have been married for forty-one years and have two adult children. She detailed her educational background, testified that she is

4

currently employed as a social worker, and her income is "about 85[,000], 90,000[]" a year. Doris stated that Marvin works at NASA and that his salary is almost $200,000 a year.

According to Doris, early in their marriage she twice filed for divorce due to Marvin's alleged adultery, but they reconciled each time. Doris testified Marvin admitted to going to another woman's house, but denied he was having an affair. Before filing for divorce in 2019, Doris placed a tracking device on Marvin's vehicle and found Marvin at a hotel with another woman; pictures of his truck at the hotel were admitted at trial. When Marvin was at the hotel, he would tell Doris that he was working late or dealing with a rental property. Doris testified that Marvin denied having an affair.

Doris asked the trial court to consider her income versus Marvin's income when making the property division. She requested that the rental properties, owned in part by third parties, go to Marvin, because the rental properties were his thing, and she believed selling and dividing the rental properties would be acrimonious. Doris requested the real property with the farms and the cows be awarded to her. She testified she worked the farm with Marvin, including baling hay, and she did not believe Marvin ever worked on the farm without her. Since she requested the farm, Doris requested some farm equipment listed in the inventories. This request included equipment "necessary for the farm[]" such as a Kubota tractor, a dozer that is

5

partially owned by Marvin's brother, a zero-turn mower, and a trailer. Doris testified that anything in the property or inventory in which Marvin's family member jointly owns should go to him. Doris also requested a fishing boat to "even out the value[,]" received by herself and Marvin in the divorce. Doris confirmed that she had not sold or liquidated any property under her control in the last four years. She requested a Qualified Domestic Relations Order (QDRO) between their retirement accounts, considering their years of service before they were married.

During cross-examination, Doris testified that at the time she filed for divorce she was working in Clear Lake during the week. According to Doris, when she filed for divorce, she was living in "a house in the country with Marvin," but denied that she was living in "the city." Doris testified that Kirbyville in Jasper County is her "permanent residence." She stated that she changed her driver's license to reflect the Kirbyville address around the time of her divorce. Doris testified that she lived at the El Dorado home in Houston "[f]rom when my children were toddlers until I left from the divorce [in May 2019]. So probably 20-something years." But she again denied Houston was her residence, testifying:

> Well, that was where we lived through the week. We considered the country house to be where we're going to retire to, move to when we retired. We went there every weekend. We secured our community relations by joining the church and participating in that community, but the plan was to physically be there all the time upon retirement, but we lived in Houston to work.

6

During cross-examination, Doris reiterated that she wanted the farm in the property division and that she wanted all the issues regarding their property to be resolved that day by the trial court, and not with a prolonged division and sale of their property and assets.

**Marvin's Testimony and Trial Evidence**

Marvin testified that at the time Doris filed for divorce he was living at the El Dorado residence in Houston. According to Marvin, before filing for divorce, Doris lived in Houston, and "[w]e only came to the house in Kirbyville as a weekend house…to take care of the animals." Marvin testified that in addition to Doris's hospice income, she makes money doing contract work between $500 to $1,500 dollars a month. Copies of their income tax returns from the 2017 and 2018 tax years were admitted as evidence showing a combined income of $166,299 and $174,588 respectively. Marvin denied having an affair and testified that he was observed riding in another woman's vehicle to "identify…[a] noise." He stated that the woman with him at the motel was a church member and that he was working with FEMA to rebuild their church.

Marvin testified that he wanted the 122-acre property in Kirbyville and to let Doris have their home in Kirbyville. Although Marvin stated that he put labor into that home, he wanted the large acreage to "reestablish myself as a cattleman[.]" Marvin said he is willing to sell the rental properties, "to make the numbers come

out right[.]" He also requested stock that he claimed was acquired before he married Doris be awarded to him as separate property. Additionally, Marvin requested an offset in the property division for taking on $30,000 worth of debt, versus $2,600 worth of debt Doris was acquiring in the proposed division of assets.

At the conclusion of trial, the court divided the couple's property as follows:[2]

| | Marvin | Doris |
|---|---|---|
| 2013 Kubota Deisel Tractor | | 100% |
| Kubota LA 1954 (Marvin claims owned 50% by another family member) | | 100% |
| Komatsu Dozer (Marvin claims owned 100% by another family member) | 100% | |
| Welder (same as portable generator per Marvin [3RR 211:13-2112:10]) (Marvin claims owned 50% by another family member) | 100% | |
| Tri Axle Trailer (Marvin claims owned 100% by another family member) | | 100% |
| 32.56 Acres of Land, located off of CR 3089, in Newton County (Marvin claims on appeal is owned 100% by another family member) | 100% | |
| 5892 Melanite, Houston, Texas 77053 in Fort Bend, County (Marvin claims owned 100% by another family member) | 100% | |
| 930 MLK, Kirbyville, Texas; 12.852 acres Jasper County | 100% | |
| CR 407, Kirbyville, Texas (50% Ownership) 8.36 acres, Abstract 289, H&TC Tract 25, Jasper County | 100% | |
| CR 407, Kirbyville, Texas (50% Ownership) 9.583 acres, Abs. 454, W.A. Fletcher Survey, Jasper County | 100% | |

[2]We only address the property division that Marvin contests on appeal.

8

| | | |
|---|---|---|
| CR 407, Kirbyville, Texas (50% Ownership with Melvin's Brother) 10 acres, Abstract 583 W.A. Fletcher, Jasper County. | 100% | |
| CR 407, Kirbyville, Texas (50% Ownership with Melvin's Brother) 14 acres, Abstract 289 H&TC, Tract 26 Jasper County | 100% | |
| CR 407, Kirbyville, Texas (50% Ownership with Melvin's brother) 20 acres, Abstract 583 A. Fletcher, Tract 43, Jasper County | 100% | |
| 122.13-acre Kirbyville Property | | 100% |
| Southern Company Stock | | 100% |
| Entergy Corporation Stock | | 100% |
| NASA Retirement Account | 50% | 50% |
| Rental Properties owned by Marvin and Doris only | 100% | |

## II. Issue One

In his first issue, Marvin argues the trial court erred in denying his Motion to Transfer Venue because "[t]he record is clear that Doris was a resident of Harris County, Texas at the time she filed suit." Texas Family Code section 6.301 provides:

> A suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been:
>
> (1) a domiciliary of this state for the preceding six-month period; and
>
> (2) a resident of the county in which the suit is filed for the preceding 90-day period.

By restricting venue to a county in which either the petitioner or the respondent has resided for the 90-day period preceding the filing of the petition, Texas Family Code

9

section 6.301(2) functions as a mandatory venue statute.[3] *Id*. "Venue may be proper in multiple counties under mandatory venue rules, and the plaintiff is generally afforded the right to choose venue when suit is filed." *In re Fisher*, 433 S.W.3d 523, 533 (Tex. 2014). "The plaintiff makes the first choice of venue by filing the lawsuit." *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 130 (Tex. 2018).

A motion to transfer venue is the proper vehicle for challenging a petitioner's choice of venue, but under our procedural rules, a trial court is required to deny such a motion if the petitioner "has adequately pleaded and made prima facie proof that venue is proper in the county of suit." Tex. R. Civ. P. 86, 87.3(c). "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." *Id*. 87.3(a).

After there has been a trial on the merits, however, we are required to review "the entire record, including the trial on the merits." Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b). "This review should be conducted like any other review of a trial court's fact findings and legal rulings, except that the evidence need not be reviewed for factual sufficiency." *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex. 1993). "We

---

[3]"'May not' imposes a prohibition and is synonymous with 'shall not.'" Tex. Gov't Code Ann. § 311.016.

10

review the record in the light most favorable to the trial court's venue ruling, but we do not give deference to the trial court's application of the law." *UPS v. Norris*, 635 S.W.3d 242, 245 (Tex. App.—Beaumont 2021, no pet.). We must uphold the denial of a respondent's motion to transfer venue "if there is any probative evidence in the entire record, including trial on the merits, that venue was proper in the county where judgment was rendered[.]" *Ruiz*, 868 S.W.2d at 758.

Doris testified at the temporary hearing that she has had a home in Kirbyville for "10, 11 years[,]" prior to filing for divorce. She testified she was born in Mount Union, right outside of Kirbyville, and was raised in Kirbyville. Doris then left Kirbyville for college and started working in Houston. According to Doris, she attends church in Kirbyville, she considers Kirbyville her "permanent residence[,]" and Houston just a place that she "make[s] money."

> Well, we had family here at the time we were coming on the weekends; and we had always planned to come back to live in Kirbyville after we retired. So[,] once we established that residence in Kirbyville, we worked in Houston Monday through Friday, Friday evenings we get in the car, we drive to Kirbyville residence, and we stayed till Sunday. And we've done that the last ten years[,] [a]nd the plan is when we retire permanently, that would be where we're going to live retirement life; but Houston was the best place to have the best job for the best financial economy.
> . . .
> I consider Kirbyville my permanent residence, and Houston is just a place where I work and make money.

In his Amended Motion To Transfer, Marvin's affidavit disputed that the Kirbyville home was Doris's residence, stating that on their joint tax return they

11

listed the Kirbyville home as a farm business, Doris is registered to vote in Harris County, her driver's license shows Harris County as her residence, and that "[s]he has never been a resident of Jasper County or held out to the state of Texas or federal government that she intends to reside in Jasper County." Marvin attached exhibits to his motion, including copies of their joint tax return, Doris's driver's license, her voter registration, and the June 2019 temporary order hearing transcript.

At trial, Doris testified again that she considered Kirbyville her permanent residence, and although she lived in Houston during the week, she and Marvin wanted to retire to Kirbyville, came to Kirbyville on the weekends, her family is in Kirbyville, and she attends church in Kirbyville. Marvin testified that at the time Doris filed suit, they were living in Harris County. According to Marvin, "[w]e only came to the house in Kirbyville as a weekend house[,] [a]nd that was only to take care of the animals." The trial court then stopped the line questioning, telling trial counsel that the issue has already been litigated.

"For venue purposes, it has long been settled that a person may have dual residences." *McAlister v. McAlister*, 75 S.W.3d 481, 485 (Tex. App.—Dallas 2002, pet. denied) (citing *Snyder v. Pitts*, 241 S.W.2d 136, 139 (Tex. 1951)); *see Alwazzan v. Alwazzan*, 596 S.W.3d 789, 809 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). "Although the term 'residence' has a variety of meanings, depending on its context, residence generally requires both physical presence and an intention to

12

remain." *Alwazzan*, 596 S.W.3d at 809 (citation omitted). The element of intent to make the home a "permanent residence" is not required. *McAlister*, 75 S.W.3d at 485 (citing *Snyder*, 241 S.W.2d at 139), *but see Alwazzan*, 596 S.W.3d at 809. Section 6.301 does not limit the number of residences a person may have at one time. *McAlister*, 75 S.W.3d at 485. In *McAlister*, the husband disputed his wife's residency arguing that the wife "spent nine out of ten nights at the ranch in Guadalupe County[,]" while the wife presented evidence that she had a lease in Bexar County, that her children attended school in Bexar County and that she paid bills in Bexar County on her residence. *See id.* The San Antonio Court of Appeals explained,

> Although this controverts the amount of time [Wife] testified that she spent at the Bexar County apartment, it does not supplant the other evidence establishing a residency. In [Husband's] supplemental letter brief, [Husband] poses the question as whether [Wife] could establish a residence in Bexar County if she "only intermittently stayed in a Bexar County apartment while residing over 90% of her time at her ranch home in Guadalupe County?" Applying the law to the facts, the trial court could reasonably have reached only one answer to that question - yes. Based on the evidence presented, the record establishes that the only decision the trial court could reasonably have reached was a finding that [Wife] had dual residences - one in Guadalupe County and one in Bexar County.

We are presented with a similar fact pattern. Doris testified that she lived in Harris County only to make money and that she considered Jasper County her home. Although Marvin presented evidence that Doris lived in Harris County, and that she visited Jasper County only on the weekends, this "controverting" evidence does not "supplant" the evidence establishing Doris's residency in Jasper County; it only

13

demonstrates that she had two residences, like the wife in *McAlister*. *See id.*; *see also In re Marriage of Vaughn*, No. 10-21-00167-CV, 2024 Tex. App. LEXIS 7574, at *3 (Tex. App.—Waco Oct. 24, 2024, no pet.) (mem. op.) ("But even if [the husband's] testimony is some evidence that [wife] maintained a residence in Freestone County, nothing prevents her from maintaining a residence in both Freestone and Leon counties at the same time."). Because the record contains some evidence Doris resided in Jasper County for the 90-day period preceding the filing of her petition for divorce, we overrule Marvin's first issue.

### III. Issue Two

In his second issue, Marvin argues that the trial court abused its discretion in the characterization of property and the division of their marital estate. "Under both the Texas Constitution and the Texas Family Code, a spouse's separate property consists of (1) the property the spouse owned or claimed before marriage, and (2) the property the spouse acquired during marriage by gift, devise, or descent." *In re Marriage of Cruey*, No. 09-21-00125-CV, 2022 Tex. App. LEXIS 6577, at *11 (Tex. App.—Beaumont Aug. 31, 2022, no pet.) (mem. op.) (citing Tex. Const. art. XVI, § 15; Tex. Fam. Code Ann. § 3.001; *Villalpando v. Villalpando*, 480 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2015, no pet.)). In contrast, community property "consists of all property, other than separate property, acquired by either spouse

14

during the marriage." *Id.* (citing Tex. Fam. Code Ann. § 3.002; *Villalpando*, 480 S.W.3d at 806).

We begin with the presumption that all property possessed by either spouse during or on dissolution of marriage is community property. *See* Tex. Fam. Code Ann. § 3.003; *Cruey*, 2022 Tex. App. LEXIS 6577, at *11; *Villalpando*, 480 S.W.3d at 806. "The burden of overcoming this presumption rests on the party asserting that the property is his separate property, and that party must establish the separate character of the property by clear and convincing evidence." *Cruey*, 2022 Tex. App. LEXIS 6577, at *11–12 (citing *Barras v. Barras*, 396 S.W.3d 154, 163 (Tex. App.—Houston [14th Dist.] 2013, pet. denied)). "'Clear and convincing' evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* at *12 (citing *Villalpando*, 480 S.W.3d at 806). "This evidence generally must trace and clearly identify the property as separate." *Id.* (citation omitted). "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Graves v. Tomlinson*, 329 S.W.3d 128, 139 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). "Generally, the clear and convincing standard is not satisfied by testimony that property possessed at the time the marriage is dissolved is separate property when such testimony is either contradicted or unsupported by

15

documentary evidence tracing the asserted separate nature of the property." *Cruey*, 2022 Tex. App. LEXIS 6577, at *12 (citing *Barras*, 396 S.W.3d at 164).

We review a trial court's division of community property for an abuse of discretion. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, or whether it acted without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). The law requires an equitable, not an equal, division of the community estate. *See* Tex. Fam. Code Ann. § 7.001; *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 546 (Tex. 2018) (Devine, J., concurring); *In re Marriage of Harrison*, 557 S.W.3d 99, 140 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the division. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (discussing an abuse of discretion in the context of a temporary injunction).

"We employ a two-part test when reviewing alleged characterization errors." *See Harrison*, 557 S.W.3d at 140 (citation omitted). Under this test, Marvin must show both a characterization error and harm—i.e., a division or an order that is manifestly unjust and unfair. *See id*. We need not reverse a trial court's division of property when the party claiming a mischaracterization fails to show how the erroneous characterization of community property as separate property caused the

16

trial court to abuse its discretion in dividing the marital estate. *See id*. at 140–41; *Lynch v. Lynch*, 540 S.W.3d 107, 133 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (citation omitted); *In re Marriage of McNelly*, No. 14-13-00281-CV, 2014 Tex. App. LEXIS 5193, at *20 (Tex. App.—Houston [14th Dist.] May 15, 2014, pet. denied) (mem. op.) ("Mischaracterization of community property as separate property is harmful and requires reversal only if the mischaracterization affects the just and right division of the community estate.").

In a bench trial, the judge is the factfinder and the sole judge of the credibility of the witnesses and weight to be given their testimony. *See Murff*, 615 S.W.2d at 700; *Zagorski v. Zagorski*, 116 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). To determine whether the trial court divided the community estate in a "just and right" manner, we must have the trial court's findings on the value of those assets. *Harrison*, 557 S.W.3d at 141.

**Property Owned or Partially Owned by a Third Party**

First, Marvin argues that the trial court erred because it awarded property that was partially owned by third parties. Marvin argues that the trial court only has the discretion to divide the community property estate, and it was error to vest title in property the couple did not fully own.

Marvin contests the following awards of property that he claims are partially owned by other family members.

17

|  | Marvin | Doris |
|---|---|---|
| Kubota LA 1954 (Marvin claims owned 50% by another family member) |  | 100% |
| Komatsu Dozer (Marvin claims owned 100% by another family member) | 100% |  |
| Welder (same a portable generator per Marvin [3RR 211:13-25]) (Marvin claims owned 50% by another family member) | 100% |  |
| Tri Axle Trailer (Marvin claims owned 100% by another family member) |  | 100% |
| 32.56 Acres of Land, located off of CR 3089, in Newton County (Marvin claims on appeal is owned 100% by another family member) | 100% |  |
| 5892 Melanite, Houston, Texas 77053 in Fort Bend, County (Marvin claims owned 100% by another family member) | 100% |  |
| 930 MLK, Kirbyville, Texas; 12.852 acres Jasper County | 100% |  |
| CR 407, Kirbyville, Texas (50% Ownership) 8.36 acres, Abstract 289, H&TC Tract 25, Jasper County | 100% |  |
| CR 407, Kirbyville, Texas (50% Ownership) 9.583 acres, Abs. 454, W.A. Fletcher Survey, Jasper County | 100% |  |
| CR 407, Kirbyville, Texas (50% Ownership with Melvin's Brother) 10 acres, Abstract 583 W.A. Fletcher, Jasper County | 100% |  |
| CR 407, Kirbyville, Texas (50% Ownership with Melvin's Brother) 14 acres, Abstract 289 H&TC, Tract 26 Jasper County | 100% |  |
| CR 407, Kirbyville, Texas (50% Ownership with Melvin's brother) 20 acres, Abstract 583 A. Fletcher, Tract 43, Jasper County | 100% |  |

Texas Rule of Civil Procedure 39(a) states the following regarding joinder of persons needed for just adjudication:

A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the

18

subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

Tex. R. Civ. P. 39(a). "Texas law thus requires the joinder of any third party that claims ownership of an asset which one or both parties to a divorce proceeding seek to classify as community property." *Fuentes v. Zaragoza*, 555 S.W.3d 141, 167 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "Joining the third party permits adjudication of that party's ownership claim to the transferred asset." *Boyo v. Boyo*, 196 S.W.3d 409, 420 (Tex. App.—Beaumont 2006, no pet.) (citation omitted); *see also In re Burgett*, 23 S.W.3d 124, 127 (Tex. App.—Texarkana 2000, no pet.). "We review a trial court's rulings on issues concerning joinder of parties for an abuse of discretion." *Fisher v. Fisher*, No. 05-19-01422-CV, 2021 Tex. App. LEXIS 4705, *3 (Tex. App.—Dallas June 14, 2021, no pet.) (mem. op.) (citing *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 910–11 (Tex. 2017)).

**Komatsu Dozer**

Marvin provided a notarized document from his brother that stated that he had full legal ownership of the two pieces of property listed above in Newton County and Houston Texas. He also claimed ownership of a Komatsu Dozer, a triaxle trailer, and a portable generator. Doris provided evidence that the Komatsu dozer was sold

19

to both Marvin and his brother, and she denied that Marvin's brother owned the dozer in its entirety. Marvin testified that he had not paid his part of the dozer purchase, and that "[t]herefore, its really his [brother's]."

**Kubota LA 1954**

At trial, Marvin submitted an inventory that showed the following.

2013 Kubota M 11 OGX (Serial #50341) and 2013 Kutoa [Kubota] LA 1954 (Acct *3732) (Perry's home) Value: $39,500.00 Debt: $16.474.99 (Acct*006) (Payable to: DuGood)

Doris submitted the same inventory on this item. Neither party testified about the Kubota LA item at trial.

**Welder/Generator**

Marvin testified at trial that the generator and welder are the same item. A copy of Marvin's brother's affidavit was submitted stating he owned the generator in full and that it "reside[s] at Marvin's and Doris['s] property in Kirbyville, Texas." Marvin denied having any ownership in the welder and stated the only reason it was at the Kirbyville property is because his brother needed a place to store the welder. In a pretrial conference with the trial court, Marvin's attorney conceded that there was "no title work" on the welder. Doris denied that the generator and welder were the same item but did not testify as to who owns the welder.

20

**Tri Axle Trailer**

Three trailers were listed on each spouse's inventory: a "1991 Utility Trailer (VIN: 1L8Tl2022M1D76742) (at far[m])[,]" "Lowboy Flatbed Trailer (at farm)[,]" and a "Cattle Trailer (at farm)[.]" In his affidavit, Marvin's brother stated that he owns a "Tri-axle flatbed trailer" that was stored at Marvin's and Doris's Kirbyville property.

At trial, Doris testified to the following regarding the trailers.

> Q. Okay. Item 5.3, which is the 1991 utility trailer worth $2,000, your husband says that he's -- well, he's asking for that, I believe. What is your position on that?
>
> A. That's the trailer that we used to move hay in the field. When it's time to take a tractor to be serviced, we put it on the trailer and pull it to the place to be serviced. So it's a part of the farm equipment that is used to take care of the farm.
>
> Q. Okay. And that's why you're asking for it, correct?
>
> A. That's why I need to help it.
>
> […]
>
> Q. 5.5 is the lowboy trailer that's at the farm and you've valued at $1,000 and that your husband valued at $6500. You're asking that be awarded to you?
>
> A. I do.
>
> Q. Do you think your husband has any -- if your husband -- does he have a need for that trailer in your opinion?
>
> A. I don't know what he could use it for, but we use it to take care of things on the farm.

21

Q. Okay. Then we'll go down –

THE COURT: Well, what about the value of it there?

Q. (Doris's Trial Counsel) Well -- so you've said that the value is $1,000 and your husband said 6,500. Why do you think the value is 1,000?

A. You know, I -- I don't know what we paid for it. I'm not even sure how I came to the thousand dollars. I can't really -- I don't know. I can't justify. I don't have any paperwork to show.

Q. Is it as nice a trailer as the other one?

A. I think I got it flipped…[t]he '91 utility trailer is not the flatbed that we use for the hay. The '91 utility trailer is a small trailer –

Q. Okay.

A. -- that is probably as wide as that desk. But the flatbed -- the lowboy flatbed is what we put the tractors on.

Q. Okay. That's 5.5?

A. Yes. Now, the '91 utility trailer, it's just used to move things around because it's not as large.

Q. I understand.

A. But they both are necessary for the farm.

Q. If he says it's worth $6500, could it be worth $6500?

A. It could.

Q. Okay. So you would –

A. I would agree to that number.

22

Q. Okay. I understand.

Marvin then testified the following regarding the trailers.

Q. Going down the list, there's a utility trailer at 5.3 and a lowboy flatbed trailer, 5.5. Does [Doris] move the tractors from the farm?

A. No.

Q. Do you have to move your tractor all over town because of the little properties?

A. I do.

Q. Have you been borrowing trailers?

A. I have.

Q. Would you like to get your trailer back?

A. I would.

Q. Do you want both 5.3 and 5.5?

A. I do.

When going over the parties' inventory in a pretrial hearing, Marvin's counsel did not contest the couple's ownership of the tractors, only that Marvin would like both the lowboy trailer and utility trailer in the property division.

**Newton County Property and Fort Bend County Property**

At trial, both inventories list the properties as follows.

CR 3089, Call, Texas (50% Ownership)
32.560 acres, A948 M. Strahan, Tract 35-3, Newton Co
Full Value: $275,400.00; 50% owned by [Marvin's Brother]

23

[…]

5829 Melanite, Houston, Texas (50% Ownership)
Mayfair Park, Block 421, Lot 2, Fort Bend County
Full Value: $101, 400.00; 50% owned by [Marvin's Brother]

Marvin testified that he owns the Newton County property "[o]n the paperwork only[,]" and that he and Doris own half of the property. According to Marvin, his brother does not want to own the property with Doris. Marvin either wanted the property to be awarded to him or the 50% sold to his brother. As for the Fort Bend County property, Marvin stated the couple shared ownership with his brother, and that he wishes to keep that ownership with his brother. Doris did not testify as her desires for the two properties or as to the ownership.

**930 MLK property**

Marvin's trial counsel told the court in the pretrial hearing, that the title on this property was "very clouded" and that it is not in the parties' names, but counsel conceded "both at some point in time had intended to be an owner in this [property]." Doris testified that the couple partially owns the property with Marvin's sister, but they do not have a deed on the property, only a "memorandum of understanding" on file with the County Clerk. She asked that any property jointly owned by Marvin's family be awarded to Marvin and not sold because the sale could be "frustrated" by Marvin's family members. Marvin testified he wished to be awarded the 930 MLK property. According to Marvin, the couple had agreed to pay his sister $10,000 for

24

five acres of the 12-acre property, but that they had only paid his sister $2,000 as of the court date. A copy of the "Memorandum of Understanding" was admitted as evidence. This document stated the following and was signed by Marvin and Doris.

> This document is written to acknowledge purchase of 5-acres of the 12.852 land by, Buyers, Marvin K. and wife Doris Varner-Bennett from Greg. H. and wife Tonja Stockman, Sellers, from the ABSTRACT 237R & T.C. SECTION 57 AND ABSTRACT 586, H & T.C. SECTION 56, JASPER COUNTY, TEXAS from the original seller, Mr. C.B. Herndon. This 5-acres is located to the left of the right-of-way, driveway, when entering from Lanier Street. A pond is located near Lanier Street and the Housing Authority for the purpose of farming/cattle. Both buyers and sellers have agreed to a purchase price of $10,000.00 dollars with an initial down payment of $1000.00. The buyers also agreed to be bound by all other terms and conditions of the original contract between Mr. C.B. Herndon, seller, and Mr. Greg. H. and wife Tonja Stockman, buyers, dated August 30, 1999. A monthly payment of $114.00 dollars to be paid by Marvin K. and wife Doris Varner-Bennett, buyers, for 10 years at 9-percent interest. This agreement was made and arranged in August 1999.

> Marvin K. and wife Doris Varner-Bennett towards purchase of the property is making an early principal payment of $6000.00. This early distribution payment is to be used by Greg and Tonja Stockman toward the purchase of a building/house to be located upon the property.

> At the time and signing of this agreement an initial deposit of $1000.00 dollars have been paid of the original sale price and principal interest payments have been made on the remaining balance, $9,000.00 [unreadable handwritten notation]. As of today's date, a total of eight monthly payments totaling $912.00 dollars have been made, of which $525.34 represents interest and $386.66 represents principal, (see amortization schedules). A principal balance in the sum of $8,618.79 remains as a result of the 8-monthly payments. A new principal balance of $2,618.79 will remain as result of a $6,000.00 early distribution payment, ($8,618.79 less $6,000.000). Monthly payments shall continue to be made until the new balance is paid in full. There shall be no penalty for early payoff.

I have read this agreement and am of sound mind to be legally bound by all the terms and conditions as stated in this Memorandum Of Understanding, (M.O.U). In the event of something happening to either/both parties entering into this agreement, the M.O.U. shall serve as a legal document to each party's remaining [handwritten "children"].

**CR 407, Kirbyville, Texas Properties (multiple properties)**

In the parties' inventories, the five CR 407 properties are listed as follows.

| |
|---|
| CR 407, Kirbyville, Texas (50% Ownership)<br>8.36 acres, Abstract 289, H&TC Tract 25, Jasper Co.<br>Full Value: $30,000.00; 50% owned by Millard Bennett |
| CR 407, Kirbyville, Texas (50% Ownership)<br>9.583 acres, Abs. 454 W.A. Fletcher Survey, Jasper<br>Full Value $34,000.00; 50% owned by Millard Bennett |
| CR 407, Kirbyville, Texas (50% Ownership w/[Melvin's] brother)<br>10 acres, Abstract 583 W.A. Fletcher, Jasper County<br>Full Value: $47,500.00 |
| CR 407, Kirbyville, Texas (50% ownership w/[Melvin's] brother)<br>14 acres, Abstract 289 H&TC, Tract 26, Jasper County<br>Full Value: $78,000.00 |
| CR 407, Kirbyville, Texas (50% ownership w/[Melvin's] brother)<br>20 acres, Abstract 583 W.A. Fletcher, Tract 43, Jasper Co.<br>Full Value: $78,000.00 |

In a pretrial conference, Marvin's attorney acknowledged that each property was owned in part by one of Marvin's family members, and that Marvin wanted to be awarded each CR 407 property. Doris testified that she would prefer Marvin be awarded two of the five CR 407 properties because they are jointly owned by Marvin's family. Doris did not testify as to her wishes for the three other CR 407

26

properties. Marvin testified that he wanted to be awarded each CR 407 property because the properties were jointly owned by his family members.

**The Award to Doris**

In its judgment, the trial court awarded Doris as her "sole and separate property" the Kubota LA 1954, and all three trailers listed in the couples' inventories. Marvin did not dispute the ownership of the Kubota LA 1954, or the trailers at trial and the only evidence to the contrary was Marvin's brother's affidavit that did not list the Kubota Tractor or The Kubota LA 1954, but did list a "Tri Axle Trailer[.]" As the factfinder the trial court was the sole judge of the credibility of the witnesses. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Considering Doris's testimony and the circumstantial evidence, there is more than a scintilla of evidence to support the trial court's award of the 2013 Kubota Tractor, Kubota LA 1954, and the trailers to Doris. The trial court did not abuse its discretion when it awarded those items to Doris. *See Boyo*, 196 S.W.3d at 420.

**The Award to Marvin**

The trial court awarded Marvin as his "sole and separate property" the Komatsu Dozer, the welder/generator, the Newton County property, the Fort Bend County property, the 907 MLK property, and all the CR 407 Kirbyville properties. Both parties testified, provided evidence at trial, and listed in their inventories that aside from the welder/generator, one of Marvin's family members had a 50% interest

in the Komatsu Dozer, the Newton County property, and the Fort Bend County property. Marvin did not object to the award at trial. Assuming without deciding that there was evidence to demonstrate a third-party ownership in the properties, Marvin has waived this issue as to the Komatsu Dozer, the welder/generator, the Newton County property, the Fort Bend County property, the 930 MLK property and the CR 407 Kirbyville properties. *See Fischer v. Wells*, No. 04-07-00328-CV, 2008 Tex. App. LEXIS 4934, at *9 (Tex. App.—San Antonio July 2, 2008, no pet.) (mem. op.) (citation omitted) ("joinder is not a jurisdictional issue, and the failure to object at the trial level waives any issue as to non-joinder"); *Banta v. Tex. Dep't of Fam. and Protective Servs.*, No. 13-06-548-CV, 2007 Tex. App. LEXIS 5888, at *1–2 (Tex. App.—Corpus Christi July 26, 2007, no pet.) (mem. op.). We overrule Marvin's second issue as it relates to the property described above, which he claims was owned by his brother or other family members.

## Separate Property

Next, Marvin argues the trial court improperly divested him of his separate property in violation of the Family Code and the Texas Constitution.

**Retirement Account**

Marvin argues the trial court erred when it divested him of part of his Civil Service Retirement System (CSRS) because it is not subject to a Qualified Domestic Relations Order (QDRO). Marvin did not raise this alleged error in the trial court

28

and has waived the right to complain about the error on appeal. *See* Tex. R. App. P. 33.1(a); *Brown v. Brown*, No. 09-06-473-CV, 2007 Tex App. LEXIS 6457, at *8 (Tex. App.—Beaumont Aug. 16, 2007, no pet.) (mem. op.) (holding the petitioner did not preserve her complaint on appeal that the trial court erred in dividing and awarding the retirement under section 7.003 of the Texas Family Code); *Byrnes v. Byrnes*, 19 S.W.3d 556, 561 (Tex. App.—Fort Worth 2000, no pet.).

Next, Marvin argues the trial court erred by divesting him of separate property in his retirement account. According to Marvin, he worked at NASA for three years before the parties were married and, in that time, contributed to the Civil Service Retirement System which would be his separate property, because the law does not allow for assignment. Marvin argues the court had no authority to divest him of his separate property, including when it awarded Doris part of his retirement.

"By statute, property possessed by either spouse during or on dissolution of the marriage is presumed to be community property unless it is shown to be separate property by clear and convincing evidence." *Waring v. Waring*, No. 09-16-00030-CV, 2017 Tex. App. LEXIS 8948, at *7 (Tex. App.—Beaumont Sept. 21, 2017, no pet.) (mem. op.) (citing Tex. Fam. Code Ann. § 3.003). "Separate property includes 'the property owned or claimed by the spouse before marriage[.]'" *Id*. (quoting Tex. Fam. Code Ann. § 3.001(1)). "Generally, characterizing property as separate or

29

community depends on its character when it was acquired." *Id.* (citing *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001)).

"When reviewing an alleged property characterization error, we must determine whether the trial court's finding is supported by clear and convincing evidence and whether the characterization error, if established, was an abuse of discretion." *Magness v. Magness,* 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet. denied); *see also Waring*, 2017 Tex. App. LEXIS 8948, at *7. Evidence is clear and convincing if it produces in the mind of the trier of fact a firm belief or conviction as to the allegation's truth. *See Waring*, 2017 Tex. App. LEXIS 8948, at *7; *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied) (citations omitted). "While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed." *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.) (citation omitted); *see also Waring*, 2017 Tex. App. LEXIS 8948, at *7.

"The characterization of property as either community or separate is determined by the inception of title to the property." *Daigle v. Daigle*, No. 09-14-00399-CV, 2015 Tex. App. LEXIS 9029, at *11 (Tex. App.—Beaumont Aug. 27, 2015, pet. denied) (mem. op.) (citing *Smith v. Smith,* 22 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (op. on reh'g)). "Inception of title occurs

30

when a party first has a right of claim to the property by virtue of which title is finally vested." *Id.* (citations omitted).

"If the evidence shows separate and community property has been commingled to defy segregation and identification, the burden is not discharged, and the statutory presumption prevails." *Id.* (citing *McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973)). Mere testimony that property was purchased with separate property funds, without any tracing of funds, is usually insufficient to rebut the community presumption. *See id.*; *see also McElwee v. McElwee*, 911 S.W.2d 182, 188 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (citing *Schmeltz v. Garey*, 49 Tex. 49, 60-61 (Tex. 1878)). "Any doubt as to the character of property should be resolved in favor of the community estate." *Boyd*, 131 S.W.3d at 612 (citing *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.)).

To determine whether the trial court abused its discretion, we must examine whether the evidence is legally and factually sufficient to support the trial court's conclusion that the disputed account is community property. *See Boyd*, 131 S.W.3d at 611. We begin by presuming that the property owned upon the dissolution of the marriage is community property, a presumption that Marvin could overcome only by a showing of clear and convincing evidence. *See* Tex. Fam. Code Ann. § 3.003. Consequently, the burden of proof rests with Marvin to show by clear and convincing evidence his separate property. *See Smith*, 22 S.W.3d at 144. Testimony

31

at trial established that Marvin had his retirement account at least three years before their marriage. But there was no testimony about what amount Marvin contributed to the account before the marriage, only that he wanted the trial court to follow the regular formula used that excludes what he earned before marriage.

The only documentary evidence provided at trial was in the couple's individual inventories, in which Doris listed the account and proposed a 50/50 split with a QDRO and that Marvin proposed his separate property and then a 50/50 split. Marvin's inventory listed the same retirement account and listed his proposed value and division. Marvin provided a value of $138,682.00 and listed that Doris wanted a 50/50 split with a QDRO and that Marvin was proposing he receive the account 100%. There was a lack of documentary evidence to clearly establish what funds in the account were Marvin's separate property. Although Marvin testified that the first three years of work and money provided to the account was before his marriage to Doris, this evidence alone does not provide clear and convincing evidence that the disputed account was created from his separate property. The trial court could have reasonably concluded that, even with Marvin's testimony, the evidence was insufficient to trace the origin of the funds to Marvin's separate property. *See Daigle*, 2015 Tex. App. LEXIS 9029, at *11; *McElwee*, 911 S.W.2d at 188.

Therefore, the trial court may have reasonably concluded that Marvin failed to provide clear and convincing evidence to overcome the presumption of

32

community property. *See* Tex. Fam. Code Ann. § 3.003. We conclude that the evidence was legally and factually sufficient to support the trial court's finding that the disputed retirement was community property, that the court's findings of fact and conclusions of law were not against the great weight and preponderance of the evidence, and that the trial court did not abuse its discretion. Additionally, because we conclude that the trial court did not err in characterizing the disputed retirement account as community property, Marvin was not improperly divested of his separate property in violation of the Texas Constitution. We overrule Marvin's second issue as it pertains to his civil service retirement accounts.

**Stocks**

Marvin argues the trial court erred when it awarded Doris his interest in Southern Company stock and Entergy Corporation stock because both stocks were his separate property purchased before he married Doris.

At trial, the parties' inventories reflect two stocks subject to our review on appeal. First, Southern Company Stock valued by Doris as $6,166.06 as of June 23, 2021, and second, Entergy Corporation Stock, valued at $11,174.96. Doris's inventory also noted that both stocks were sold in July 2019 by Marvin in violation of the trial court's temporary order. Doris testified that based on her "records" Marvin bought both stocks during their marriage and therefore the stocks were community property. A copy of the Direct Stock Purchase Plan Account Statement

33

for Southern Stock Company was admitted into evidence. This statement was addressed to both Marvin and Doris and listed both names under the account summary information. A copy of the Direct Stock Purchase Plan Account Statement for Entergy Corporation was also admitted and was similarly addressed to both Marvin and Doris and listed both of their names under the account summary information.

Marvin testified that he was not sure the exact day that he procured the Southern Stock, but that "it was somewhere around about 1980." Marvin described taking advice from a "good friend" to purchase the stock, who then helped facilitate the purchase, and he was sure he purchased the stock before his marriage, although he does not have documentation to support that claim.

While we agree that a court cannot divest an owner of separate property, there is no divestiture of separate property when a party has not met the burden to overcome the presumption of community property, and the court characterizes the property at issue as community. *See Goyal v. Hora*, No. 03-19-00868-CV, 2021 Tex. App. LEXIS 4205, at *21–22 (Tex. App.—Austin May 27, 2021, no pet.) (mem. op.) (affirming the trial court's judgment of stock as community property because appellant failed to provide clear and convincing documentary evidence to trace the stock, although there was testimony that it was separate property); *In re Everse*, 440 S.W.3d 749, 751 (Tex. App.—Amarillo 2013, no pet.) (citation omitted) ("As a

34

general rule, mere testimony that funds came from a separate source, without any tracing of the funds, will not constitute the clear and convincing evidence necessary to rebut the community presumption."); *see also* Tex. Fam. Code Ann. § 3.003. "As the factfinder, the trial court alone determines the credibility of the evidence and the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony." *Eckhardt v. Eckhardt*, 695 S.W.3d 883, 892 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (citations omitted). In light of the conflicting evidence, the trial court may have reasonably concluded that Marvin failed to overcome the community property presumption of the community stocks. We overrule Marvin's second issue as it relates to the stocks.

## Community Property

In his final complaint regarding the property division, Marvin argues the trial court abused its discretion when it awarded Doris an unequitable distribution of their community property. Marvin contends the trial court's award of community property was "manifestly unfair and unjust," arguing the trial court erred when it awarded Doris the 122-acre Kirbyville Property (122 acre property), the $135,404 CD used as collateral for the loan on the 122 acre property, and the 2013 Kubota Diesel Tractor, and when it awarded Marvin rental properties that were ordered to be liquidated and sold, leaving Marvin with all the "debt burden, tax burden, upkeep,

maintenance and costs of sale…[resulting] in an unshared loss in value to Marvin, based upon a net value of 8-10 % less when the cost of sale is considered."

**Just and Right Division**

We review the trial court's division of community property under an abuse-of-discretion standard. *Dibassie v. Dibassie*, No. 09-20-00287-CV, 2022 Tex. App. LEXIS 8480, at *34 (Tex. App.—Beaumont Nov. 17, 2022, pet. denied) (mem. op.) (citing *Murff*, 615 S.W.2d at 698; *Downer*, 701 S.W.2d at 241-42). To determine whether the trial court divided the community estate in a "just and right" manner, we must have the trial court's findings of the value of those assets. *Id.* (citing *Harrison,* 557 S.W.3d at 141). Marvin's complaints concern whether legally and factually sufficient evidence supports the trial court's findings. "When a party attacks the legal sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)); *see Dibassie*, 2022 Tex. App. LEXIS 8480, at *33–34; *Danner v. Danner*, No. 09-18-00385-CV, 2020 Tex. App. LEXIS 8492, at *17 (Tex. App.—Beaumont Oct. 29, 2020, pet. denied) (mem. op.). When reviewing for legal sufficiency, we consider the evidence "in the light most favorable to the verdict and indulge every reasonable inference that would support" the challenged finding. *City*

*of Keller*, 168 S.W.3d at 822. We review a trial court's findings for factual sufficiency of the evidence under the same legal standards as applied to review jury verdicts for factual sufficiency of the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When a party attacks the factual sufficiency of the evidence on an issue on which she had the burden of proof, "she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242. In a factual sufficiency review, we examine all the evidence and view it in a neutral light. *See id*. We cannot set the finding aside unless the evidence is so weak or so against the great weight and preponderance of the evidence that the trial court's finding is clearly wrong and unjust. *Id*. In other words, we cannot substitute our judgment for the factfinder's if the evidence supports the challenged finding. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (discussing factual sufficiency); *see also In re J.L.*, 163 S.W.3d 79, 86–87 (Tex. 2005) (discussing legal sufficiency).

When dividing a couple's marital estate, trial courts have a statutory duty to "order a division of the estate of the parties in a matter that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001. Trial courts may consider several factors in dividing a marital estate, including the disparity of incomes and the parties' earning capacities, the benefits that a spouse would have derived from the marriage

had it continued, each spouse's "business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property." *Murff,* 615 S.W.2d at 699; *Dibassie,* 2022 Tex. App. LEXIS 8480, at *35. "When the appellant complains the trial court abused its discretion because it did not fairly divide the couple's estate, we will not overturn the trial court's division of the property if the record contains some evidence of a substantive and probative character supporting it." *Dibassie*, 2022 Tex. App. LEXIS 8480, at *35 (citing *Hinton v. Burns*, 433 S.W.3d 189, 193 (Tex. App.—Dallas 2014, no pet.)).

In family law cases, the abuse-of-discretion standard overlaps with the traditional legal and factual sufficiency standards of review, and legal and factual sufficiency issues are not independent grounds asserting error but are factors relevant to the appellate court's evaluation of whether an abuse of discretion occurred. *See Dibassie*, 2022 Tex. App. LEXIS 8480, at *36. "To decide whether an abuse of discretion occurred, we consider whether the trial court (1) had sufficient evidence to exercise its discretion and (2) erred in that discretion" *Id.* (citing *Hinton*, 433 S.W.3d at 193-94) (other citation omitted). The first prong of this two-part test focuses on whether the trial court's ruling is supported by sufficient evidence. *Id.*; *see also Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 857. In a case in which some evidence supports the trial court's ruling, the second part of the test requires

the appellate court to determine whether trial court's ruling is reasonable. *Hinton*, 433 S.W.3d at 194; *Moroch*, 174 S.W.3d at 857.

Marvin maintains that the trial court failed to divide the marital estate in a just and right manner. He argues that although he was awarded most of the rental properties, this results in more work and financial hardship for him. He also asserts that the award of the 122-acre property, which he contends is overgrown and unused by Doris, will hurt his retirement and his ability to reestablish himself as a cattleman. In a pretrial conference, Marvin's trial counsel told the trial court that the only property Marvin wanted in the property division was the 122-acre property, and that "all the others in his opinion can be sold and split or awarded to [Doris], whatever it takes to get [Marvin the 122-acre property]." Trial counsel for both parties also told the court that the CD used as collateral should go with the property or be sold and split so the party getting the property can refinance the property. Marvin testified that he wanted the tractor in the property division to work the 122 acres to "reestablish myself with the Cattlemen's Association[.]"

Doris testified that no one lives on the 122-acre property because there is no house. But Doris wished to be awarded the 122-acres because it was not tied up with a family member and not a rental property. According to Doris, she takes care of the cows on the 122-acre property. Doris disagreed that Marvin solely worked the property before their divorce, and claimed that she visited the property "every time

39

Marvin went." Doris also requested to be awarded the CD used as collateral on the 122-acre property so she could be awarded debt in the property division. Regarding some of the rental properties, Doris testified that she "had nothing to do with the property during the marriage[,]" and that Marvin handled the rental properties, made repairs, and handled communication with the tenants. She requested that Marvin be awarded the rental properties and that the properties be sold and the money split between herself and Marvin, because she did not believe the parties could continue to "deal" with each other after the divorce was granted, and a lot of the rental properties have shared ownership with Marvin's family. Doris also asked the trial court to consider their income, claiming Marvin makes "double" her income. Finally, Doris explained that she placed her values on the property and the debts on her inventory and had to rely on her research and numbers because Marvin failed to update the inventory with numbers before trial. Doris testified there were two diesel tractors in dispute listed on their inventories. Both tractors were Kubota diesel tractors, one was stored at their property in Kirbyville, and one was stored at Marvin's brother's home. According to Doris, there was a note on the Kubota tractor, but she requested the tractor in the divorce because Marvin was not using the tractor to work cattle since it was stored at his brother's home, and Doris intended to use the tractor to farm at the Kirbyville property. Doris requested that an unusable Massey Ferguson tractor be awarded to Marvin.

Marvin requested the 122-acre property and testified that he was "fine" with however the rest of the real estate was to be awarded or sold. Marvin testified that he had been paying the note on the 122-acre property for the last four years. Marvin asked to be awarded the 122-acre property to "reestablish [him]self as a cattleman." He requested that the CD follow the 122-acre property but he would also "try" to refinance the 122-acre property if the CD was partially or wholly awarded to Doris. Marvin testified about several of the properties and stated that he was "okay" with the properties being awarded to Doris or sold and the profits split with Doris.

During the trial, the trial court heard evidence about the non-exclusive factors that a judge is to consider in determining a just and fair property division, including fault in the breakup; the spouses' education and work experience; their earning capacities, business experience, and business opportunities; their age and health; the current disparity in their income; the nature of the community property; the size of the separate estate; and the benefit the spouse not at fault would have received had the marriage continued. *See Murff*, 615 S.W.2d at 698; *Villalpando*, 480 S.W.3d at 807. In its judgment, the trial court awarded Doris three properties, all related to her home in Kirbyville, and Marvin received the remainder of the property, including all rental properties. The trial court found that it had made a just and right division of the couple's property. The trial judge had the opportunity to see both parties testify and to judge their credibility. Under these circumstances, we conclude the trial court

41

did not abuse its discretion in dividing the community estate because the trial court had sufficient information to exercise its discretion and did not divide the community estate in a manner that is manifestly unjust or unfair. *See Murff*, 615 S.W.2d at 698–99; *Villalpando*, 480 S.W.3d at 807. We overrule Marvin's second issue.

## IV. Issue Three

## Grounds for Divorce

**Adultery**

Marvin's final issue argues that the trial court erred in finding adultery because there was "no actual evidence that Marvin ever engaged in a single adulterous act with anyone."[4] According to Marvin, "[t]he existence of cars in a parking lot or even of Marvin being in the presence of another woman does not establish adultery."[5] Marvin argues that the trial court could have decided not to reference the adultery as grounds for the divorce and that under the evidence before the trial court "[t]he existence of cars in a parking lot or even of Marvin being in the presence of another woman does not establish adultery."

---

[4]Both parties alleged adultery in their petitions. We note that the trial court did not make a finding in its decree on which party committed adultery but did state in its Findings of Fact and Conclusions of Law that it finds that Marvin committed adultery.

[5]Marvin does not argue that the trial court made a disproportionate distribution of the marital estate based on a finding that she committed adultery.

The Family Code assigns the determination of grounds for divorce to the discretion of the trial court. *See Applewhite v. Applewhite*, No. 02-12-00445-CV, 2014 Tex. App. LEXIS 2306, at *3–4 (Tex. App.—Fort Worth Feb. 27, 2014, no pet.) (mem. op.) (citing Tex. Fam. Code Ann. §§ 6.001, 6.003). A trial court "*may grant a divorce in favor of one spouse if the other spouse has committed adultery.*" Tex. Fam. Code Ann. § 6.003 (emphasis added); *see also In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas 2009, no pet.) (citation omitted) (Adultery is "voluntary sexual intercourse of a married person with one not the spouse."). Adultery can be shown by direct or circumstantial evidence. *Id.*

During trial, Marvin denied having an affair during their marriage. Marvin claimed he was conducting church business regarding a new building and FEMA funding. Doris testified she placed trackers on Marvin's vehicles and observed Marvin with a woman at different motels, and the trial court admitted pictures of Marvin's vehicle at the motel. Marvin denied having an affair and testified he was meeting with people at the motels to conduct church business after his church was flooded. Based on the testimony, the trial court could have reasonably believed that Marvin engaged in an adulterous relationship with another woman during his marriage to Doris. *See Greco v. Greco*, No. 04-07-00748-CV, 2008 Tex. App. LEXIS 9878, at *17 (Tex. App.—San Antonio Aug. 29, 2008, no pet.) (mem. op.) ("We defer to the fact-finder's determination with regard to credibility and weight

to be given their testimony and conclude that the evidence is factually sufficient to support the [factfinder's] finding of adultery as a basis for the divorce."). On the record before us, we cannot say that the trial court abused its discretion in finding adultery as a ground for the dissolution of the marriage. We overrule Marvin's final issue.

## V. Conclusion

Having overruled all of Marvin's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on March 26, 2025
Opinion Delivered June 5, 2025

Before Golemon, C.J., Johnson and Chambers, JJ.